ESTATE OF NANCY F. CRAFTS, DECEASED, WILLIAM A. DICUS, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4443–79.     Filed September 25, 1980.

*Joseph D. Edwards,* for the petitioner.
*J. Michael Melvin,* for the respondent.

OPINION

Nims, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Nancy F. Crafts, deceased, William A. Dicus, personal representative (the estate), in the amount of $64,419.

Concessions having been made, the issues for decision are: (1) Whether a split-interest charitable remainder trust established by the will of decedent's husband and includable in the estate by virtue of decedent's general power of appointment is subject to the provisions of section 2055(e);[1] (2) if section 2055(e) is applicable, whether a postmortem division of the trust property can qualify under section 2055(e)(3) or as a disclaimer under section 2055(a) so that the estate is entitled to a charitable deduction; and (3) whether the estate is entitled to an award for attorney's fees and costs.

All of the facts in this case have been stipulated and are found accordingly. The stipulation and the attached exhibits are incorporated herein by reference.

At the time the petition in this case was filed, William A. Dicus resided in Dunedin, Fla. A timely estate tax return was filed on behalf of the estate on January 27, 1977.

Nancy F. Crafts, the decedent, died testate on October 29, 1975. The decedent had executed her will on June 15, 1973, with

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect at the time of the decedent's death, except as otherwise expressly indicated.

a first codicil executed October 15, 1975. The will, as amended by the codicil, was duly admitted to probate in the Circuit Court for Pinellas County, Fla., probate division.

Decedent was the widow of John Osborn Crafts (Mr. Crafts), who died testate on March 10, 1969.

Mr. Crafts' will was executed on October 13, 1965, and was not republished by codicil or otherwise subsequent to that date. This will was duly admitted to probate in the County Judge's Court, Pinellas County, Fla.

Mr. Crafts' will created a testamentary trust of which decedent was named the life income beneficiary. The Toledo Trust Co. was named the sole trustee. In addition, the will vested in the decedent an inter vivos general power of appointment over the trust property, via an unrestricted power to invade trust corpus for decedent's own benefit. The relevant provision of Mr. Crafts' will on this point reads as follows: "My Trustee shall, from time to time, during the lifetime of my said wife, pay or distribute such part or all of the principal of said trust property to her as she may request in writing." Mr. Crafts' will provided for certain small gifts to be paid out of the trust corpus upon the decedent's death. The residue remained in trust subject to the following conditions: Mr. Crafts' brother, Osborn Crafts, was to receive $300 annually from trust income for the duration of his life;[2] 40 percent of the remaining trust income was to be paid to the Webb Institute of Naval Architecture (Webb Institute), with the 60-percent balance payable to certain noncharitable beneficiaries, all of whom were Mr. Crafts' relatives; upon the death of the last to die of the individual income beneficiaries, 75 percent of the trust corpus was to be paid to the Webb Institute and 25 percent to Leicester Junior College.

Both the Webb Institute and Leicester Junior College are organizations described in section 2055(a) and were such organizations at the time of decedent's death.

After the decedent's death, the personal representative of her estate requested a determination from the Internal Revenue Service as to whether a charitable deduction was allowable for

[2]Although the parties stipulated that the $300 sum was payable monthly, Mr. Crafts' will states that Osborn Crafts was to receive "the sum of Three Hundred Dollars ($300.00) each year in quarterly installments." Regardless, Osborn Crafts was deceased at the time of decedent's death.

the value of the remainder interest passing to the charitable beneficiaries. By a letter ruling dated September 28, 1976, the Revenue Service determined that the estate was precluded from taking a charitable contribution deduction under section 2055(a) with respect to the remainder interest transferred to the Webb Institute and Leicester Junior College as the requirements of section 2055(e)(2) were not satisfied.

The personal representative subsequently requested a determination from respondent as to whether Mr. Crafts' trust could be amended to comply with the requirements of section 2055(e). In a letter ruling dated November 26, 1976, respondent determined that the trust could not be amended under section 2055(e)(3). Respondent additionally ruled that the trust did not come within the savings clauses set forth in section 20.2055–2(e), Estate Tax Regs.

The provisions of the trust created by Mr. Crafts' will gave the trustee broad discretionary powers to administer the trust property, including the power "to do all acts and things which it, in the exercise of its judgment and discretion, may deem needful, desirable and expedient for the proper and advantageous management of the trust property, to the same extent and with like effect as might be done in the exercise of ordinary prudence by an individual in absolute ownership and control of the property." Among other things, Mr. Crafts' will vested in the trustee the power "to make physical division of the trust property, and hold and administer each separate share for the benefit of the beneficiaries thereof."

Pursuant to the above-mentioned powers, in January 1977, the trustee exercised its discretionary authority to effect a physical division of the trust property. As a consequence of the division, 40 percent of the trust property was set aside exclusively for the benefit of the Webb Institute, and the remaining 60 percent was set aside to provide life estates for the trust's individual beneficiaries, with the remainder to the charities.

On the estate tax return, the full value of the trust property, $440,739.45, was included in decedent's gross estate under "Schedule H-Powers of Appointment." On "Schedule N-Charitable, Public and Similar Gifts and Bequests" the estate listed a $173,371.32 bequest to the Webb Institute. This figure was intended to represent the portion of the trust set aside exclusive-

ly for the Webb Institute and was arrived at by computing 40 percent of the net value of trust.

There is no dispute that the full value of the trust established by Mr. Crafts' will is includable in the decedent's gross estate under section 2041(a)(2) by reason of the general power of appointment over the trust principal vested in the decedent. Rather, the dispute here concerns the applicability of the constructive charitable bequest provisions of 2055(b)(1),[3] and the extent, if any, to which section 2055(e) precludes the charitable deduction authorized under section 2055(a).

Bequests to or for the use of entities described in section 2055(a) are generally deductible from the gross estate. Pursuant to section 2055(b)(1), the interests in Mr. Crafts' trust which passed to the Webb Institute and Leicester Junior College are, for purposes of section 2055, considered to be a bequest of the decedent. Nonetheless, it is evident that the bequests which were deemed to be made by the decedent constituted interests in a "split-interest" trust since both charitable and noncharitable beneficiaries had interests in the trust originally established by Mr. Crafts' will. Thus it is apparent that, but for petitioner's argument that section 2055(e)[4] is inapplicable (discussed *infra* ),

---

[3]SEC. 2055(b) POWERS OF APPOINTMENT.—

(1) GENERAL RULE.—Property includible in the decedent's gross estate under section 2041 (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.

[4]Sec. 2055(e) provides as follows:

(e) DISALLOWANCE OF DEDUCTIONS IN CERTAIN CASES.—

(1) No deduction shall be allowed under this section for a transfer to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) subject to the conditions specified in such sections.

(2) Where an interest in property (other than an interest described in section 170(f)(3)(B)) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—

(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or

(B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly).

(3) In the case of a will executed before December 31, 1977, or a trust created before such date, if a deduction is not allowable at the time of the decedent's death because of the failure

the interests passing to the Webb Institute and Leicester Junior College would be disallowed by the provisions of that section.

Generally, section 2055(e) provides that where successive interests in the same property pass to both charitable and noncharitable beneficiaries, no charitable deduction is allowed under section 2055(a) unless the form requirements specified in subsection (e)(2)(A) or (B) are satisfied. There is no issue as to whether the original trust terms satisfied the requirements of section 2055(e)(2) since the parties have stipulated that Mr. Crafts' trust is not a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund; additionally, the parties agree that the Webb Institute's income interest is not a guaranteed annuity or a fixed percentage, distributed yearly, of the fair market value of the property.

Not surprisingly, the estate's first argument is that section 2055(e) is inapplicable, and in so arguing, the estate requests us to reconsider our holding in *Estate of Sorenson v. Commissioner*, 72 T.C. 1180 (1979), discussed *infra*. In support of this conten-

---

of an interest in property which passes from the decedent to a person, or for a use, described in subsection (a), to meet the requirements of subparagraph (A) or (B) of paragraph (2) of this subsection, and if the governing instrument is amended or conformed on or before December 31, 1978, or, if later, on or before the 30th day after the date on which judicial proceedings begun on or before December 31, 1978 (which are required to amend or conform the governing instrument), become final, so that interest is in a trust which meets the requirements of such subparagraph (A) or (B) (as the case may be), a deduction shall nevertheless be allowed. The Secretary may, by regulation, provide for the application of the provisions of this paragraph to trusts whose governing instruments are amended or conformed in accordance with this paragraph, and such regulations may provide for any adjustments in the application of the provisions of section 508 (relating to special rules with respect to section 501(c)(3) organizations), subchapter J (relating to estates, trusts, beneficiaries, and decedents), and chapter 42 (relating to private foundations), to such trusts made necessary by the application of this paragraph. If, by the due date for the filing of an estate tax return (including any extension thereof), the interest is in a charitable trust which, upon allowance of a deduction, would be described in section 4947(a)(1), or the interest passes directly to a person or for a use described in subsection (a), a deduction shall be allowed as if the governing instrument was amended or conformed under this paragraph. If the amendment or conformation of the governing instrument is made after the due date for the filing of the estate tax return (including any extension thereof), the deduction shall be allowed upon the filing of a timely claim for credit or refund (as provided for in section 6511) of an overpayment resulting from the application of this paragraph. In the case of a credit or refund as a result of an amendment or conformation made pursuant to this paragraph, no interest shall be allowed for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed.

We note that Pub. L. 94–455, sec. 1304(a) (as amended by Pub. L. 95–30, sec. 309(b)(2)) substituted "December 31, 1977," for "September 21, 1974" and "December 31, 1975" where each previously appeared in sec. 2055(e)(3).

tion, the estate relies upon the savings provisions of section 201(g)(4) of the Tax Reform Act of 1969 (the TRA), Pub. L. 91–172, 83 Stat. 549, 565, 1969–3 C.B. 54. Though not formally incorporated into the body of section 2055(e), section 201(g)(4) of the TRA specifies that under certain circumstances section 2055(e) will be inapplicable. These include the following:

(4) (A) * * *

(B) Such amendments [to section 2055(e)] shall not apply in the case of property passing under the terms of a will executed on or before October 9, 1969—

(i) * * *

(ii) if the decedent at no time after October 9, 1969, had the right to change the portions of the will which pertain to the passing of the property to, or for the use of, an organization described in Section 2055(a), or

(iii) * * *

(C) Such amendments shall not apply in the case of property transferred in trust on or before October 9, 1969—

(i) * * *

(ii) if the property transferred was an irrevocable interest to, or for the use of, an organization described in Section 2055(a), or

(iii) * * *

It is readily apparent that the thrust of the above provisions is to render inapplicable the more restrictive provisions of section 2055(e) to irrevocable trusts created before October 10, 1969, or property irrevocably transferred in trust prior to such date. The estate argues that the charitable interests in the trust property passed under the terms of Mr. Crafts' will, which, as stated above, was executed on October 13, 1965 (Mr. Crafts died on March 10, 1969, thus prior to October 10, 1969). As a consequence, petitioner views section 201(g)(4)(B)(ii) of the TRA as rendering section 2055(e) inapplicable because the decedent at no time had the right to change those portions of Mr. Crafts' will which pertain to the passing of the trust property to the Webb Institute and Leicester Junior College.

In *Estate of Sorenson v. Commissioner, supra,* we rejected the above interpretation of section 201(g)(4)(B)(ii) of the TRA. The decedent in that case possessed a testamentary general power of appointment over property which, pursuant to the terms of her husband's will, had been placed in a trust; the husband had died on May 30, 1969. In default of such decedent's exercise of the power of appointment, at her death the property was to remain in trust for the benefit of individual life income beneficiaries

with the remainder interest passing to a charitable beneficiary. As of February 22, 1974, the date of the *Sorenson* decedent's death, the trust did not comply with the requirements of section 2055(e)(2)(A).

The executrix in *Sorenson* argued that the right to modify the portions of the will (i.e., the will of the husband) which originally provided for the charitable interest was vested solely in the decedent's husband and not in the decedent. In refusing to adopt this narrow reading, we interpreted section 201(g)(4)(B)(ii) of the TRA as encompassing the decedent's potential exercise of her power of appointment; any exercise of such power would, in effect, have changed the portions of the husband's will which pertained to the passing of the property to the charitable beneficiary. See *Estate of Sorenson v. Commissioner*, 72 T.C. at 1190–1191. We adhere to our holding in *Sorenson* that to the extent section 2055(e) modifies section 2055(a), it equally modifies section 2055(b)(1).[5]

As in *Estate of Sorenson*, it is evident here that decedent's inter vivos power to invade (and thus remove the property constituting the trust corpus from effective disposition by the terms of Mr. Crafts' will) gave decedent the right to nullify, in whole or in part, the portions of Mr. Crafts' will which "pertain[ed] to the passing of the property to, or for the use of" the Webb Institute and Leicester Junior College.

While the absence of a testamentary power of appointment may have deprived the decedent of the express right to change her deceased husband's will, the inter vivos power vested in the decedent accomplished the same result. Accordingly, under *Estate of Sorenson*, petitioner's argument that section 201(g)(4)(B)(ii) of the TRA precludes the applicability of section 2055(e) must fail.[6]

---

[5]Sec.. 2055(b) was amended by Pub. L. 94–455, sec. 1902(a)(4)(A),(c)(1), effective for estates of decedents dying after Oct. 4, 1976, to eliminate old sec. 2055(b)(2). Old sec. 2055(b)(1) is now simply sec. 2055(b).

[6]In Rev. Rul. 76–504, 1976–2 C.B. 286, respondent viewed a situation similar to the one presented in the instant case as involving a transfer made by the decedent power holder *after* Dec. 31, 1969, under a will executed after Oct. 9, 1969, because of sec. 2055(b); the property subject to the power was deemed to pass under the terms of the second decedent's will and not that of the first. Whether the instant case is viewed as a transfer passing under a will executed after Oct. 9, 1969 (the decedent's will), as in Rev. Rul. 76–504, or as a situation where the property passes under the predeceased husband's will, a will which the decedent possessed the

It is also apparent that section 201(g)(4)(*C*)(ii) of the TRA, *supra* (emphasis added), does not render section 2055(e) inapplicable. Initially, we note that it is doubtful that subparagraph (C)(ii) is relevant in the case of *testamentary* trusts. That situation appears to be covered by section 201(g)(4)(*B*)(ii) of the TRA (emphasis added).[7] Regardless, even assuming the applicability of this provision and a pre-October 9, 1969, transfer, petitioner's argument on this point cannot prevail. Since decedent possessed a general power of appointment over the entire trust property, it simply cannot be said that, as of the date of the original transfer in trust, either the Webb Institute or Leicester Junior College possessed an *irrevocable* interest in such property.

Given that section 2055(e) *is* operative, it is clear that, absent a specific relief provision, the instant charitable deduction cannot be allowed since the parties have agreed that the trust as originally established did not take the form of any of those specified in section 2055(e)(2)(A) and that the Webb Institute's income interest was not described in section 2055(e)(2)(B). It is in this context that the estate argues in the alternative that the 40-percent portion of Mr. Crafts' trust, which the trustee allocated for the benefit of the Webb Institute (pursuant to the trustee's vested power to do so under Mr. Crafts' will), is eligible for a charitable deduction under section 2055(e)(3).

Section 2055(e)(3)[8] is a relief provision which authorizes a charitable estate tax deduction for transfers which would otherwise not be eligible for a deduction because of section 2055(e). In the estate's view, the following language of section 2055(e)(3) authorizes a deduction for the 40-percent portion:

If, by the due date for the filing of an estate tax return (including any extension thereof), the interest is in a charitable trust which, upon allowance of a deduction, would be described in section 4947(a)(1), or the interest passes directly to a person or for a use described in subsection (a), a deduction shall be allowed as if the governing instrument was amended or conformed under this paragraph.

---

right to modify because of her power of appointment, as in *Estate of Sorenson v. Commissioner*, 72 T.C. 1180 (1979), the result is nonetheless the same—sec. 201(g)(4)(B)(ii) of the TRA is inapplicable.

[7]Moreover, even if subparagraph (B)(ii) is applicable, the *transfer* occurred on the date of decedent's death (a date well after Oct. 9, 1969) because of sec. 2055(b). See Rev. Rul. 76–504, *supra*.

[8]See n. 4 for text of sec. 2055(e)(3).

The estate argues that the trustee's division resulted in the creation of a trust which, upon the allowance of a deduction, would be described in section 4947(a)(1)[9] since only the Webb Institute has the unexpired interests therein. Because the division occurred in January 1977, which was within the period for filing a timely estate tax return,[10] the estate concludes that a deduction is allowable under section 2055(e)(3).

As an initial matter, respondent insists that section 2055(e)(3) does not authorize the postmortem division sought here for the reason that that subsection is inapplicable to trusts created prior to July 31, 1969. Although the statute is not limited to inter vivos trusts created or wills executed *after* July 31, 1969, respondent has drawn our attention to the legislative history surrounding section 2055(e)(3), and sec. 24.1, Temporary Estate Tax Regs., T.D. 7393, 1976-1 C.B. 283, to bolster this contention. We need not pause for long on this point, however, for as we observed in *Estate of Humbert v. Commissioner*, 70 T.C. 542, 550 (1978), the preamble to respondent's own regulation—Temporary Regs., sec. 24.1, 1976-1 C.B. at 283—states that they apply "to any interest for charitable purposes which passes under a will executed before September 21, 1974" and "to *inter vivos* transfers created after July 31, 1969, which are irrevocable at the date of death." (Emphasis supplied.) Since the trust in question was by no stretch of the imagination an inter vivos trust, and since the statute itself has been amended to extend the September 21, 1974, date regarding testamentary dispositions to and including December 30, 1977, without any reference to July 31, 1969, respondent's argument regarding the July 31, 1969, date is totally without merit.

---

[9]SEC. 4947. APPLICATION OF TAXES TO CERTAIN NONEXEMPT TRUSTS.

(a) APPLICATION OF TAX.—

(1) CHARITABLE TRUSTS.—For purposes of part II of subchapter F of chapter 1 (other than section 508(a), (b), and (c)) and for purposes of this chapter, a trust which is not exempt from taxation under section 501(a), all of the unexpired interests in which are devoted to one or more of the purposes described in section 170(c)(2)(B), and for which a deduction was allowed under section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), or 2522 (or the corresponding provisions of prior law), shall be treated as an organization described in section 501(c)(3). For purposes of this section 509(a)(3)(A), such a trust shall be treated as if organized on the day on which it first becomes subject to this paragraph.

Sec. 170(c)(2)(B) describes charitable purposes.

[10]The original due date for filing the return was July 29, 1976. Respondent extended this date to Oct. 29, 1976, and then to Jan. 29, 1977. Since Jan. 29, 1977, fell on a Saturday, the return was due on the following Monday, Jan. 31. Sec. 7503.

We now return to the estate's contention that the interests for which a charitable deduction were claimed (the Webb Institute's income and remainder interests in the 40-percent portion)[11] were in a charitable trust which, upon the allowance of a deduction, would be described in section 4947(a)(1). Respondent failed to address the legal question of whether the trustee's division resulted in the creation of a second wholly charitable trust. Respondent's failure to challenge petitioner's position aside, we believe the trustee's division created a second trust, at least for purposes of sections 2055(e)(3) and 4947(a)(1).[12]

Hitherto, we have noted that Mr. Crafts' will authorized the trustee:

to do all acts and things which it, in the exercise of its judgment and discretion, may deem needful, desirable or expedient for the proper and advantageous management of the trust property, to the same extent and with like effect as might be done in the exercise of ordinary prudence by an individual in absolute ownership and control of the property at any time comprising the trust property hereunder.

The trustee also possessed the specific authority "to make physical division of the trust property, and hold and administer each separate share for the benefit of the beneficiaries thereof." It is apparent that, as to the 40-percent portion of the trust, the division resulted in an arrangement whereby the trustee held legal title to the property in order to protect and conserve it solely for the Webb Institute's benefit.

---

[11]Regardless of the life expectancy of the individual by which the Webb Institute's income interest is measured, the value of the income *and* the remainder interests in the 40-percent portion totals 100 percent of said portion since the Webb Institute is both the income beneficiary and the remainderman. See, e.g., sec. 25.2512–5(f), Gift Tax Regs., cols. 3 & 4, tables I & II.

[12]In this regard, we note that the estate bases its claim for a deduction on the fact that a separate trust for the benefit of the Webb Institute was created by the trustee's division. In *Estate of Edgar v. Commissioner*, 74 T.C. 983 (1980), this Court rejected an argument based upon the economic realities of the trust in question, rather than on the creation of a separate trust by action of the fiduciary, as here.

In *Estate of Edgar*, the residue of the decedent's estate was bequeathed to a trust previously established by her predeceased sister. The trust agreement provided that the trust's net income would be paid to both nonqualifying individuals and charitable institutions. By the time of the decedent's death in 1973, the required distributions to nonqualifying beneficiaries totaled $3,300 annually; the trust's principal (approximately $249,000) generated $13,149 in income during 1973. The essence of the taxpayer's argument, which we rejected, was that where the economic facts concerning a transfer which provides for nonqualifying beneficiaries to receive a part interest in property are such that those beneficiaries will never receive any portion of that part interest, sec. 2055(e) is inapplicable.

While there may be substantial doubt that the testamentary power to make physical division of the trust assets among separate shares would be sufficient to create separate trusts under other provisions of the Code, regulations, or perhaps State law (see, for example, sec. 663(c), and sec. 1.663(c)–1(a), Income Tax Regs.), section 4947(a)(2)(B) and (a)(3), and the regulations thereunder provide, in effect, that for purposes of section 4947(a)(1) (and, we assume, by osmosis sec. 2055(e)(3)), segregated amounts for exclusively charitable purposes shall be treated as separate trusts. Section 53.4947–1(c)(3)(iii), Foundation Excise Tax Regs., provides as follows:

> (iii) *Exclusively charitable amounts.* If, under section 4947(a)(2)(B),
> (A) an amount held in trust which is devoted exclusively to noncharitable income and remainder interests is segregated from
> (B) an amount held in trust which is devoted exclusively to charitable income and remainder interests, then for purposes of this section the amount described in paragraph (c)(3)(iii)(B) of this section will· be treated as a charitable trust which is subject to the provisions of section 4947(a)(1).

The 40-percent portion of the trust is "segregated from amounts for which no deduction was allowable [the 60-percent portion]" (sec. 4947(a)(2)(B)) and is devoted exclusively to charitable income and remainder interests, since the Webb Institute is both the sole income beneficiary and the sole remainderman. We accordingly conclude that this amount is to be treated as a separate trust for purposes of applying sections 4947(a)(1) and 2055(e)(3).

Since the share which we shall hereinafter for convenience call the "Webb Institute trust" was in existence by the due date of the estate tax return, the next consideration is whether that trust was a wholly charitable trust which, upon the allowance of a deduction, would be described in section 4947(a)(1). For purposes of section 2055(e)(3), a trust is described in section 4947(a)(1) if the following two requirements are satisfied: (1) It is not exempt from taxation under section 501(a); and (2) all of its unexpired interests are devoted to one or more of the purposes described in section 170(c)(2)(B).[13] There is, of course,

---

[13]There is a third requirement enunciated in sec. 4947(a)(1), namely, that a charitable deduction must have been allowed for the trust (under the relevant Code sections). However, since that is the very issue with which sec. 2055(e)(3) is concerned, the third sentence of sec. 2055(e)(3) avoids the resulting circularity of analysis by stating that requirement as given.

no evidence that the Webb Institute trust has received a favorable ruling as to its income tax-exempt status; nor is there, of course, any evidence concerning an application for income tax exemption. As a result, the trust is not exempt from taxation under section 501(a). See sec. 53.4947–1(b)(1)(ii), example (1), Foundation Excise Tax Regs.[14]

Moreover, since the Webb Institute is an organization described in section 170(c)(2)(B), IRS Pub. No. 78, all of the trust's unexpired interests are devoted to section 170(c)(2)(B) purposes. The Webb Institute trust thus satisfied the pertinent requirements of section 4947(a)(1) by the due date of the estate tax return.

On the basis of the foregoing analysis, it would appear that the estate has made a prima facie case for claiming a deduction under section 2055(e)(3) for the 40-percent portion. Respondent, however, argues that the *only* postmortem amendments authorized by section 2055(e)(3) are those enumerated in that section's first sentence (i.e., those which have the effect of transforming the trust or interest into one of the forms specified in section 2055(e)(2)(A) or (B)). In respondent's view, the third sentence of section 2055(e)(3) merely relieves the estate from amending the governing instrument in the situation where an interest passes directly to charity by the due date for filing the return; respondent does not construe this provision as authorizing an *alternative* amendment procedure. In support of this position, respondent relies on section 24.1(h)(1), Temporary Estate Tax Regs.,[15] which essentially provides that the third sentence of

---

[14] A trust's description in sec. 4947(a)(1) does not automatically render it exempt under sec. 501(a), since it is treated as a sec. 501(c)(3) organization only for purposes of pt. II, subch. F, ch. 1 (excluding sec. 508(a), (b), and (c)) and ch. 42. Under sec. 508, the Commissioner must still be notified that the trust intends to apply for recognition of sec. 501(c)(3) status. In the case of a sec. 4947(a)(1) trust, the exception from this notice requirement does *not* apply for purposes of sec. 501(a). Sec. 1.508–1(a)(3)(*d*), Income Tax Regs.

[15] Sec. 24.1(h)(1), Temporary Estate Tax Regs. (26 C.F.R. sec. 24.1), provides in pertinent part as follows:

(h)(1) In the case of a will executed before September 21, 1974, or [an inter vivos] trust created (within the meaning of applicable local law) before such date and after July 31, 1969, that creates an interest for which a deduction would be allowable under section 2055(a) but for section 2055(e)(2)(A), if the date of death of the decedent is prior to January 1, 1976, and if on or before the filing date of the estate tax return (including any extension thereof)—

(i) The interest is in a charitable trust which, if a deduction under section 2055(a) had been allowed, would be in a trust described in section 4947(a)(1), or

(ii) Such interest passes directly to a person or for a use described in section 2055(a) (as, for example, by reason of the termination of an intervening interest),

section 2055(e)(3) is inapplicable if its requirements (i.e., that the interest either pass directly to the charity or is in a wholly charitable trust) are "satisfied as a result of an amendment of a dispositive provision of the governing instrument occurring since the date of death of the decedent." Respondent urges that this regulation is valid, particularly in view of the specific authorization for the promulgation of regulations contained in section 2055(e)(3)[16] and also since section 2055(e)(3) was twice amended subsequent to the promulgation of regulations section 24.1, without any indication of congressional disapproval thereof.[17]

We consider respondent's argument inapposite, particularly his reliance on regulations section 24.1(h)(1). Literally, there has not been any amendment. Here, the trustee exercised the ministerial authority granted to him by paragraph IV of Mr. Crafts' will to effect a physical division of the property so that a portion of the Webb Institute's interests (its 40-percent income interest and 40 percent of its interest in the original trust corpus) resided in the Webb Institute trust. For this reason, the restriction contained in regulations section 24.1(h)(1), *supra*, is not controlling. That restriction is applicable in the situation where a postmortem amendment of a dispositive provision of the

the governing instrument shall be treated as if it were amended or conformed pursuant to paragraph (a) of this section and a deduction shall be allowed. * * * A governing instrument treated as amended under this paragraph may not thereafter be amended. *The provisions of this paragraph shall not apply if the requirements of subdivision (i) or (ii) of this paragraph (h)(1) are satisfied as a result of an amendment of a dispositive provision of the governing instrument occurring since the date of death of the decedent.* (Emphasis supplied.)

[16]The second sentence of sec. 2055(e)(3) provides in part:

The Secretary may, by regulation, provide for the application of the provisions of this paragraph to trusts whose governing instruments are amended or conformed in accordance with this paragraph * * *

The First Circuit in *Merchants National Bank v. United States*, 583 F.2d 19, 22 (1st Cir. 1978), has thus characterized sec. 24.1, Temporary Estate Tax Regs. (26 C.F.R. sec. 24.1), as a "legislative," vis-a-vis an "interpretative," regulation.

In *Estate of Humbert v. Commissioner*, 70 T.C. 542, 550 (1978), this Court expressed approval of the regulations insofar as the provisions of sec. 1.24.1(l) and (5), Temporary Estate Tax Regs., are concerned.

[17]This facet of respondent's argument focuses on the application of the "reenactment doctrine." Respondent views Congress' two extensions of the times for amending nonqualifying trusts as signifying tacit approval of the statutory interpretation expressed in the regulations. E.g., *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472 (1979); *Helvering v. Reynolds*, 313 U.S. 428 (1941).

governing instrument has occurred, presumably under local law by authority of the court having appropriate jurisdiction.

Respondent has also cited the following language contained in S. Rept. 93–1063, 93d Cong., 2d Sess. (1974), 1974–2 C.B. 449, as support for the proposition that Congress did not intend section 2055(e)(3) to allow the postmortem amendment of a trust in order to "accelerate" a charitable remainder:

> In addition, in any case where the trust has become a wholly charitable trust before the due date for filing the estate tax return, no actual amendment of the governing instrument is to be necessary. Thus, if the noncharitable interest in the trust is terminated by the decedent's death and there are no remaining noncharitable interests, a deduction is to be allowed as if the governing instrument had been amended to conform to the charitable remainder trust requirements.

We think the real import of the congressional concern, as carried out in the Commissioner's regulations, was to obviate the possibility of a postmortem revision of the testator's or grantor's intent by an amendment which would make possible the compliance with sec. 2055(e)(3). In the case before us, the testator's granted authority was simply exercised by the trustee—the trustee, in effect, carried out Mr. Crafts' intent. Such act required no court-approved amendment because it was taken pursuant to the provisions of the will itself. Thus, the restriction against postmortem amendment in regulations section 24.1(h) is not applicable here.

Respondent's final argument for denying petitioner a charitable deduction is premised on the theory that the Webb Institute's interest in the 40-percent portion resulted from the trustee's postmortem division and thus cannot be considered a transfer by the decedent. Essentially for reasons already stated, such a theory does not hold water.

However, respondent has cited Rev. Rul. 78–105, 1978–1 C.B. 295, to elucidate his position on this point which, for completeness, we now consider. Rev. Rul. 78–105 postulated a decedent's will establishing a nonqualifying charitable remainder trust. The trustee, under the authority of local law, disregarded the intervening income interest (bequeathed to support a pet animal) and thereby converted the charity's remainder interest into a present interest. As a consequence, in the Commissioner's opinion the interests were no longer split between private and charitable beneficiaries since only one interest remained. The

ruling stated that "since the present interest would pass to charity only upon the exercise of the trustee's discretionary power, the present interest is not deemed to pass from the decedent." We express no opinion as to the correctness of this holding.

Respondent, on brief, has analogized the above holding to the instant situation and argues that "the acceleration of the charity's remainder interest to a present interest resulted from the independent exercise of the trustee's discretion under the provisions of Mr. Crafts' will rather than from the transfer by the decedent at the decedent's death."

Assuming, arguendo, the correctness of the legal theory supporting the above holding in Rev. Rul. 78–105, respondent's argument nevertheless stems from a misconception of both petitioner's arguments and the facts of the case at hand. In contrast to the facts of Rev. Rul. 78–105, there was no fundamental change in the nature of the interest received by the Webb Institute—the charitable beneficiary; there was no acceleration of the Webb Institute's remainder interest into a present one. Under section 2055(b), the decedent is considered to have bequeathed to the Webb Institute both a 40-percent income interest *and*, at a minimum, a remainder interest of 40 percent in the overall trust property (the Webb Institute's remainder interest in the *total* property is 75 percent). The division merely reflects those same original interests and is directly traceable to the source of the charity's interest, namely, the relevant trust provisions of Mr. Crafts' will, which, as above stated are deemed to be bequests of the decedent. Cf. *Lyeth v. Hoey*, 305 U.S. 188 (1938) (property received in settlement of will contest considered a bequest from decedent for income tax purposes). Since the Webb Institute received 40 percent of the income and a minimum of 40 percent of the remainder of the trust created under Mr. Crafts' will, any amounts received pursuant to the postmortem division are held to result from a transfer by the decedent, not the trustee.[18]

This is not a case where the allowance of a deduction would

---

[18]This case does not involve a situation where the fiduciary is given the *discretion* to determine whether a bequest is to be devoted to charitable vis-a-vis private, uses. *Burdick v. Commissioner*, 117 F.2d 972 (2d Cir. 1941), cert. denied 314 U.S. 631 (1941); Rev. Rul. 55–335, 1955–1 C.B. 455. *Burdick* and Rev. Rul. 55–335 were cited as support for respondent's ruling in Rev. Rul. 78–105, 1978–1 C.B. 295.

frustrate the policy underlying the enactment of the require-
ments of section 2055(e). The primary focus of that policy was
the concern that in the case of split-interest bequests, the
amounts which estates had claimed as charitable deductions did
not necessarily bear any relation to the amounts the charity
would ultimately receive. S. Rept. 91–552 (1969), 1969–3 C.B 423,
479. That this policy is not being subverted is especially true here
since, by virtue of the 40-percent division of the trust property,
only the Webb Institute had any interest therein. As to the
Webb Institute trust, there is no adversity between the income
beneficiary and the remainderman, they being one and the
same.[19]

In addition, it is evident that section 2055(e)(3) was enacted as
a relief provision in order to alleviate the difficulties caused by
the complex requirements of the Tax Reform Act of 1969
relating to split-interest bequests. See S. Rept. 93–1063, 93d
Cong., 2d Sess. (1974), 1974–2 C.B. 449. As a relief provision
which inures to the benefit of charity, we believe that it should
be construed liberally so that the intended charitable purposes
are furthered, assuming (which we believe to be the case) that
this can be accomplished without in any way subverting
congressional intent. *Helvering v. Bliss*, 293 U.S. 144, 151 (1934);
cf. *Allen v. Commissioner*, 514 F.2d 908, 915 (5th Cir. 1975)
(liberal construction and application of section 6013(e) in favor
of those whom the statute was designed to benefit was required
in order to effectuate the statute's purpose).[20] To provide
otherwise would harm the class which section 2055(e)(3) was
enacted to benefit—charitable organizations—since the addi-
tional estate taxes which are imposed by the denial of a
deduction are often borne substantially by the charity. See S.

[19]Compare the example given in the report of the Senate Finance Committee in which the
investment of the trust corpus in high-income, high-risk assets, was viewed as enhancing the
value of the private-income beneficiary's interest to the detriment of the value of the charity's
remainder interest. S. Rept. 91–552, 91st Cong., 1st Sess. (1969), 1969–3 C.B. 423, 479.

[20]Respondent has acknowledged that the provisions of the tax law granting exemptions to
charity are liberalizations of the law which, being begotten from motives of public policy, are
not to be narrowly construed. Rev. Rul. 56–185, 1956–1 C.B. 202.

Rept. 94–938, 94th Cong., 2d Sess. (1976), 1976–3 C.B. (Vol. 3) 49, 638.[21]

Accordingly, we hold that by the due date for petitioner's estate tax return, the Webb Institute's 40-percent income and remainder interests were in a charitable trust described in section 4947(a)(1). Consequently, petitioner is entitled to a deduction for the amount claimed on its return.[22]

Under the authority of our decision in *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977), affd. 613 F.2d 1306 (5th Cir. 1980), petitioner's claim for attorney's fees and costs are denied. See also *Olick v. Commissioner*, 73 T.C. 479 (1979).

*Decision will be entered under Rule 155.*

---

[21]Because the tax proposed in the notice of deficiency ($133,064) exceeds the value of the probate estate ($119,259.94), the denial of a deduction under sec. 2055(a) would preclude the estate from making $8,500 in specific bequests to the YMCA and YWCA.

[22]As a result of this holding, we need not consider petitioner's argument that the postmortem division qualifies as a disclaimer under sec. 2055(a).