PAULINE NEWMAN, Circuit Judge.
 

 Shriners Hospitals for Crippled Children (hereinafter “Shriners”) appeals the judgment of the United States Claims Court, 14 Cl.Ct. 51 (1987), affirming the taxpayer estate’s liability for payment of interest on a tax deficiency assessed prior to retroactive reformation of a testamentary split-interest
 
 *1562
 
 trust, interpreting 26 U.S.C. § 2055(e)(3) (1984).
 

 We reverse the decision of the Claims Court.
 

 Background
 

 By will of Ernest C. Hudson, who died on February 15, 1979, half of his estate, amounting to $169,569.88, was placed in trust for the benefit of Mrs. Ben Downey during her lifetime, with the remainder to be paid to Shriners on her death. Mrs. Downey died on August 23, 1979, having received $4,675 in income from the testamentary trust. The remainder was then paid to Shriners. The estate filed its final federal tax return on December 15, 1979, claiming a charitable deduction for the entire trust amount.
 

 In September 1980 the Internal Revenue Service (“IRS”) disallowed the entire deduction because the testamentary split-interest trust as established in the will did not meet the requirements of 26 U.S.C. § 2055(e)(2),
 
 [1]
 
 and assessed a tax deficiency of $38,788.85. Interest was assessed in the amount of about $4,300 for late payment of this tax, measured by the period between the date the return was due and the date the deficiency was paid. The estate paid these amounts, and did not challenge the correctness of the decision, under the law then in effect, within the statutory limitations period.
 

 By the Deficit Reduction Act of 1984 (“DEFRA”), Pub. L. No. 98-369, 98 Stat. 494, the law affecting split-interest charitable remainder trusts was amended,
 
 inter alia
 
 as codified at 26 U.S.C. § 2055(e)(3)(F), to provide that if the income beneficiary dies before the estate tax is due the will is deemed reformed as of the date of death,
 
 see
 
 26 U.S.C. § 2055(e)(3)(C) regarding “reformable interest”, to create a gift passing directly to the charity.
 

 By DEFRA § 1022 this provision was made retroactive to include the period affecting the estate here at issue, and such taxpayers were authorized to obtain estate tax refunds that would otherwise be barred by the statute of limitations. Shriners, remainderman under the testamentary trust and successor in interest (by state court action) to the tax refund claim, duly claimed refund of the tax and interest paid. After six months had passed without IRS action, Shriners filed suit in the Claims Court. The government conceded the estate's entitlement to refund of the tax paid. The Claims Court upheld the government’s denial of refund of the interest assessed upon late payment of the tax.
 

 Discussion
 

 A
 

 It is undisputed that the requirements are met of 26 U.S.C. § 2055(e)(3)(F), which provides that “a deduction shall be allowed for such reformable interest as if it had met the requirements of [section 2055(e)(2)] on the date of the decedent’s death.” Shriners asserts that the interest paid by the taxpayer, on a tax that was retroactively expunged by law, should be refunded to the taxpayer. Shriners states that Section 2055(e)(3) itself, its legislative history, the Treasury Regulations, and judicial authority, require that the Section 2055(e)(3) reformation of the will be effective “for all purposes”, including not only liability for the estate tax but also interest on any underpayment thereof.
 

 The government relies on the provision of DEFRA § 1022(e)(3)(B) [not codified, appearing as a note to 26 U.S.C. § 2055] prohibiting the government from
 
 paying
 
 interest on refunded taxes under § 2055(e)(3), when the refund is available (as here) only because of the retroactive waiver of the period of limitations:
 

 (B) No interest where statute [of limitations] closed on date of enactment. — In any case where the making of the credit or refund of the overpayment described in subparagraph (A) is barred on the date of the enactment of this Act,
 
 *1563
 
 no interest shall be allowed with respect to such overpayment (or any related adjustment) for the period before the date 180 days after the date on which the Secretary of the Treasury (or his delegate) is notified that the reformation has occurred.
 

 Thus Congress, providing that such tax overpayment shall be refunded, relieved the government of its obligation, under the general rule of 26 U.S.C. § 6611(a), to pay interest on refunds of overpayments.
 
 See Broum & Williamson, Ltd. v. United States,
 
 688 F.2d 747, 749, 231 Ct.Cl. 413 (1982) (“the Service’s normal practice has been and is to pay interest on retroactive refunds of taxes.”) The government argues that § 1022(e)(3)(B) should be interpreted to bar refund to the taxpayer of the interest that the taxpayer had paid for the time that the deficiency was outstanding, despite the statutory removal of the deficiency. The Claims Court held that this interpretation is fairer, since it would place late-paying taxpayers on equal footing with those who timely paid the tax under the law then in effect.
 

 Tax and interest payments are creatures of statute, and such statutory provisions are to be given their plainest reasonable meaning, in implementation of the discemable intent of Congress.
 
 [2]
 
 The intent of Congress to achieve a retroactive statute “for all purposes” is stated in the legislative history.
 
 See, e.g.,
 
 130 Cong. Rec. H7108 (daily ed. June 27, 1984), statement of the 1984 amendment’s sponsor, Rep. Gibbons:
 

 [The bill’s] fundamental premise is that an unqualified trust, if amended or conformed ... whether effectuated through judicial proceeding or agreement among all interested parties, is treated for tax purposes as if the amended trust was actually in the will ... as of the date of the decedent’s death. The amended trust is to be treated as a qualified charitable remainder trust not merely for deduction purposes but for all purposes____
 

 See also
 
 Senate Finance Comm., Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Finance Committee on May 21, 1984, S. Rep. 169, 98th Cong., 2d Sess., 734 (Comm. Print 1984).
 

 The Court of Claims in
 
 First Nat’l Bank of Oregon v. United States,
 
 571 F.2d 21, 23, 215 Ct.Cl. 609 (1978), similarly discussed the prior version of law and regulation, stating that “These regulations provided that unqualified charitable remainders created and reformed to qualify during this period of time would be treated as qualified ‘for all purposes’ from the date of their original creation.”
 

 We conclude that § 1022(e)(3)(B), which refers solely to interest paid by the government to the taxpayer, has no applicability to interest paid to the government, and that the congressional intent of reformation for all purposes requires treatment “as if the amended trust was actually in the will”, in Rep. Gibbons words,
 
 supra.
 
 The effect of this provision is as if the tax were never due. If no tax was due, there can not have been a deficiency assessed, or interest for late payment thereof.
 

 Such recovery of interest paid on a tax that, by retroactive reformation of the will, was not owed, fulfills the conditions explained in
 
 United States v. Hoppers Co.,
 
 348 U.S. 254, 263, 75 S.Ct. 268, 273, 99 L.Ed. 302 (1955):
 

 [T]he taxpayer must sustain the proposition that the tax relief granted under [the tax-abating statute] is necessarily retroactive, extinguishing the deficiency as of the original due date of the tax and thus eliminating the interest charges for the corresponding period.
 

 In
 
 Hoppers Co.
 
 the taxpayer sought refund of the interest assessed on a deficiency under a wartime excess profits tax, when the deficiency was later relieved by statute. The Supreme Court held that the statute did not retroactively forgive the prior years’ taxes, although the tax itself was abated, and thus that the interest
 
 *1564
 
 could not be recovered by the taxpayer. The Court held that the abatement was not retroactive to the “original due dates of the taxes abated”.
 
 Id.
 
 at 255-56, 75 S.Ct. at 268-69. Similarly in
 
 Manning v. Seeley Tube & Box Co.,
 
 338 U.S. 561, 568, 70 S.Ct. 386, 390, 94 L.Ed. 346 (1950), the Court held the taxpayer liable for interest although the deficiency on which it was based was later abated by virtue of enactment of a law authorizing carry-back of net operating losses incurred in later years. The subsequent change in law did not change Seeley Tube’s tax obligation for the year in question; it merely allowed Seeley Tube to carry back subsequent losses, thereby reducing the amount of tax owed.
 

 In contrast, 26 U.S.C. § 2055(e)(3) eliminated the basis of the tax obligation. By reformation of the will, it was as if no tax had ever been due. It would contravene Congress’ intent to give retroactive effect to this provision for all purposes, to assess interest on late or underpayment of a tax that was not owed.
 
 Accord Oxford Orphanage, Inc. v. United States,
 
 775 F.2d 570 (4th Cir.1985).
 
 [3]
 

 REVERSED.
 

 [1]
 

 . The complexity of this statute, which was designed to prevent possible abuse of split-interest charitable remainder trusts,
 
 see Crafts v. Commissioner,
 
 74 T.C. 1439, 1455 (1980), led to the enactment, starting in 1974, of relief provisions similar to that here invoked. These provisions had lapsed and were reinstated with retroactive effect in 1984, giving rise to the issue at bar.
 

 [2]
 

 .
 
 See, e.g., Beneficial Corp. and Subsidiaries v. United States,
 
 814 F.2d 1570, 1574 (Fed.Cir.1987) (normal deference to agency interpretation does not dispense with meaningful review; agency interpretation that contravenes clearly discernible legislative intent can not stand).
 

 [3]
 

 . Shriners cites this decision as a basis for collateral estoppel against the United States. In view of our decision on the merits, we pretermit the question of estoppel.