**FLUOR CORPORATION and Affiliates, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–769T.**

United States Court of Federal Claims.

May 24, 1996.

Stanford G. Ross, Washington, D.C., for plaintiff.

---

William K. Drew, with whom were Assistant Attorney General Loretta C. Argrett and Mildred L. Seidman, Washington, D.C., for defendant. David Gustafson, of counsel.

## OPINION

MARGOLIS, Judge.

This federal income tax case is before the court on plaintiff's motion for summary judgment and defendant's cross motion for partial summary judgment. The question is whether a foreign tax credit carryback to an earlier tax year which eliminates a tax underpayment for that earlier year also results in an elimination of interest on the underpayment, as plaintiff maintains, or whether plaintiff must pay deficiency interest from the due date of the underpayment-year tax return to the due date of the carryback generating-year tax return, as defendant claims. After careful consideration of the record, and after hearing oral argument, this court finds that no material issue of fact exists and that plaintiff is entitled to judgment as a matter of law. Accordingly, this court grants plaintiff's motion for summary judgment and denies defendant's motion for partial summary judgment.

## FACTS

Plaintiff, an affiliated group of corporations with Fluor Corporation as its common parent (Fluor), filed consolidated federal income tax returns. The Internal Revenue Service (IRS) examined Fluor's tax return for the tax year ending October 31, 1982, and determined that there was an underpayment of tax for that year. The underpayment, however, could be reduced by additional foreign tax credits based upon a carryback of foreign taxes paid or accrued during plaintiff's taxable year 1984.

The IRS concluded that Fluor owed interest on the amount of the underpayment satisfied by the foreign tax carryback from the due date of the tax return for the 1982 underpayment year (January 15, 1983) through the due date of the tax return for the 1984 carryback-generating year (January 15, 1985). The IRS computation provided that interest would accrue until the due date of plaintiff's return for tax year 1984 because the 1982 deficiency was eliminated by the carryback of foreign taxes from 1984 to 1982—the IRS thus treated the 1982 tax deficiency as "paid" in 1984. (The 1984 carryback was subsequently displaced by a carryback of foreign taxes from 1983 to 1982.)

Fluor contended that no interest was due on the portion of the 1982 tax underpayment which was eliminated by the foreign tax carryback, claiming that the tax relief under the foreign tax carryback was retroactive, extinguishing the deficiency and thus eliminating the interest charges on the deficiency. In effect, Fluor claimed that the foreign taxes carried back from later taxable years and used as credits in earlier years should be treated as taxes paid in the earlier years. In the event that it does not prevail on this issue, plaintiff argues that the interest period should run only to the end of the carryback-generating tax year.

Fluor paid the interest assessed by the IRS with respect to its 1978, 1981, and 1982 tax years on April 15, 1992. On May 19, 1992, Fluor filed claims for refunds equal to the difference between the amount of interest assessed by the IRS and the amount of interest computed by Fluor after making reductions for the foreign tax carrybacks. The IRS disallowed the claims, stating in a December 9, 1993 letter to the plaintiff that the reason for the disallowance was that "[a] clear legislative intent not to apply the use of money principle of *Seeley* has not been established."

Plaintiff filed a complaint with this court on December 17, 1993, seeking refunds of assessed interest with respect to plaintiff's 1978, 1981, and 1982 taxable years of $2,570,674, $8,717,239, and $3,740,615, respectively, plus statutory interest.

Plaintiff has submitted a settlement offer to defendant with respect to liability and computational issues for tax years 1978 and 1981 based on subsequently determined loss carrybacks from tax year 1984 which eliminated the issue of when foreign tax credits which are carried back are to be taken into account for purposes of computing deficiency interest. If the settlement offer is accepted,

then only tax year 1982 will remain in dispute.

The parties subsequently stipulated that: (1) if plaintiff should prevail with respect to the 1982 tax year, the amount of the judgment to be entered in plaintiff's favor is $2,403,756.85 in interest paid, plus statutory interest on this amount of $235,096.43, accrued through April 15, 1992, plus interest from April 15, 1992; (2) if defendant prevails, judgment should be entered in plaintiff's favor in the amount of $30,046.82 in interest paid, plus interest from April 15, 1992; (3) if defendant prevails on the primary issues, but plaintiff prevails on the issue of the appropriate ending date for the computation of restricted interest, then judgment should be entered in plaintiff's favor in the amount of $394,319.21 in interest paid, plus interest from April 15, 1992.

## DISCUSSION

Section 6601(a) of the Internal Revenue Code of 1954, as amended (26 U.S.C.) provides, in general, for interest on tax deficiencies:

> *General Rule.*—If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid.

Section 6601(d), which provides for "restricted interest" when a deficiency is subsequently reduced by a loss or credit carryback, makes no mention of foreign tax carrybacks. The section provides a "use of money" rule for calculating this interest. The taxpayer must pay interest on the deficiency until the filing date of the loss- or credit-generating year:

> If the amount of any tax ... is reduced by reason of a carryback of a net operating loss or net capital loss, such reduction in tax shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which the net operating loss or net

capital loss arises. [Same rule for credit carrybacks.]

26 U.S.C. § 6601(d).

In general, taxes paid to foreign governments are deductible under § 164(a). Under § 901, however, taxpayers may elect to claim a credit, instead of a deduction, with respect to foreign taxes upon income and certain other similar types of foreign taxes. Section 904(a) imposes a limitation on the amount of the foreign tax credit that may be claimed under § 901. This limitation is based upon a ratio of the taxpayer's foreign-source taxable income to the taxpayer's total taxable income.

Section 904(c) provides for certain carrybacks and carryforwards of excess foreign taxes where a taxpayer elects to claim a foreign tax credit, but where the amount of the credit that could otherwise be claimed exceeds the limit set forth in § 904(a). Section 904(c) provides that such excess taxes

> shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the second preceding taxable year, in the first preceding taxable year, and in the first, second, third, fourth, or fifth succeeding taxable years, in that order.... Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart....

Along with the enactment of § 904(c), authorizing foreign tax carrybacks for purposes of applying the foreign tax credit, Congress enacted § 6611(g), which imposes restricted interest principles with respect to *overpayments* caused by credits based on foreign tax carrybacks. Congress did not, however, make any corresponding amendment to § 6601 regarding *underpayments* that are satisfied by foreign tax credits based on foreign tax carrybacks. Although § 6611 provides generally that taxpayers are entitled to interest on overpayments of tax, § 6611(g) provides that if an overpayment of tax results from a carryback of foreign taxes, the taxpayer is *not* entitled to interest on the overpayment during the restricted interest period ending with the filing date of the

carryback-generating year. Section 6611(g) provides that

> if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the filing date ... for the taxable year ... in which such taxes were in fact paid or accrued.

Section 6611(f) provides a similar rule for loss or credit carrybacks:

> if any overpayment of tax ... results from a carryback of a net operating loss or net capital loss, such overpayment shall be deemed not to have been made prior to the filing date for the taxable year in which such net operating loss or net capital loss arises ... [same rule for credit carrybacks].

Prior to amendment in 1982, sections 6601(d), 6611(f), and 6611(g) each provided that the restricted interest period ended with the last day of the carryback year. After the 1982 amendment, the restricted interest period ended with "the filing date" for the carryback year.

Plaintiff claims that foreign taxes paid or accrued in a subsequent year and carried back to an earlier year should be treated, for purposes of deficiency interest, the same as foreign taxes paid or accrued in the earlier year. These foreign tax carrybacks would therefore reduce any deficiency in the earlier year upon which interest may be imposed. In the event the court finds that interest *is* due on the underpayment satisfied by the foreign tax carryback, plaintiff maintains that the interest period should run only to the end of the year in which the foreign taxes carried back were paid.

Plaintiff supports its position by pointing out that nothing in the Code provides for the imposition of deficiency interest in these circumstances. Section 6601(d), providing for the payment of deficiency interest in the loss or credit carryback situations, omits any mention of foreign tax carrybacks. Further, Section 904(c) provides that such carrybacks are "deemed" paid in the earlier year.

Defendant, on the other hand, maintains that Fluor owes interest on the 1982 tax underpayment eliminated by the foreign tax carryback, and that this interest runs from the due date of the 1982 return until the due date of the tax return for the year in which the carryback was generated.

Defendant contends that, in accordance with Supreme Court opinions interpreting predecessor statutes, § 6601(a) imposes interest on all underpayments of tax, absent a clear legislative expression to the contrary, because a taxpayer who does not pay his tax liability in a timely manner has the use of funds rightfully belonging to the government. Defendant claims that there is no clear legislative expression absolving taxpayers who underpay their taxes from liability for interest if the underpayment is later eliminated by foreign tax credits that are based on foreign tax carrybacks. Further, defendant points out that under § 6611(g), taxpayers are not entitled to interest on refunds from the government of overpayments of tax due to foreign tax carrybacks, so that not imposing interest on underpayments subsequently satisfied by these carrybacks would penalize taxpayers who timely pay their full tax liabilities and then receive refunds due to a carryback of foreign taxes from a later year.

In *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 565, 70 S.Ct. 386, 388–89, 94 L.Ed. 346 (1950), the Supreme Court addressed the question "whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carryback of a net operating loss." The Court concluded that the government is entitled to the "use of the money owed" by a taxpayer, absent a clear expression by Congress to the contrary. *Seeley*, 338 U.S. at 566, 70 S.Ct. at 389.

Section 292 of the 1939 Code provided for interest at the rate of 6% from the due date of a tax payment. *Id.* Section 122(b)(1) provided for the carryback of a net operating loss: "'If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, ....'" *Id.* at 564 n. 5, 70 S.Ct. at 388 n. 5.

The *Seeley* Court found that "[t]he subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency." *Id.* at 565, 70 S.Ct. at 388. The Court reasoned that

> the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. *In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government.*

*Id.* at 566, 70 S.Ct. at 389 (emphasis added).

The Court addressed the application of the use of money principle to the loss carryback provisions:

> The enactment of the carry-back provision in 1942 did not change this policy of the statute requiring prompt payment. This section was intended to afford taxpayers an opportunity to present for tax purposes a realistic, balanced picture of their profits and losses.... But there is no indication that Congress intended to encourage taxpayers to cease prompt payment of taxes.

*Id.* at 566–67, 70 S.Ct. at 389.

The Court then elaborated on its concerns that taxpayers who promptly pay their taxes would be penalized if deficiency interest were not assessed against taxpayers who satisfy underpayments with loss carrybacks. The Code prohibited taxpayers who pay their tax and then have an overpayment due to loss carrybacks from claiming interest on the overpayment.

In the present case, plaintiff's interpretation of the Code would penalize taxpayers who timely pay their tax liabilities and then receive refunds due to carrybacks of foreign taxes as compared to taxpayers who do not satisfy tax deficiencies when due, but whose deficiencies are subsequently eliminated by foreign tax carrybacks.

*Seeley* differs from the present case, however, because § 904(c) of the Code provides that carrybacks of foreign tax "shall be deemed taxes paid or accrued" in the year to which the excess taxes are carried back. The statute at issue in *Seeley* provided that the net operating loss "shall be a net operating loss carryback for" the year to which the net operating loss is carried back. Plaintiff argues that the language of § 904(c) is a "clear legislative expression" that such carrybacks operate to eliminate any tax liability in the earlier year upon which interest may be assessed.

In *United States v. Koppers Co.*, 348 U.S. 254, 256, 75 S.Ct. 268, 269, 99 L.Ed. 302 (1955), the Supreme Court found that abatements of excess profits taxes were not retroactive, so that taxpayers were obligated to pay interest on the taxes until the date of abatement. The Court held that as the statute precluded the payment of interest to the taxpayer on refunds of excess profits taxes overpaid by reason of an abatement,

> [t]his treats the Government as entitled to the use of the abated amounts between the time of their overpayment and that of their abatement. Equity demands a comparable result in the case of underpayments.... This is the natural counterpart of the Government's freedom from paying interest on refunded overpayments.

*Koppers,* 348 U.S. at 267, 75 S.Ct. at 274. The Court further found that *Seeley* "is thoroughly consistent in principle with the above discussion." *Id.* at 270, 75 S.Ct. at 276.

The Federal Circuit faced a question similar to that in the present case in *Shriners Hospitals for Crippled Children v. United States,* 862 F.2d 1561 (Fed.Cir.1988). The holding in *Shriners* resulted in a situation in which late-paying taxpayers were *not* placed on an equal footing with those who timely paid their tax. The Federal Circuit held that the taxpayer did not owe interest on underpayments of tax, although the statute provided that the IRS was not obligated to pay interest on overpayments of tax.

At issue in *Shriners* was a 1984 amendment to the law affecting split-interest charitable remainder trusts, which provided, in 26

U.S.C. § 2055(e)(3)(F), that if the income beneficiary of an unqualified trust dies before the estate tax is due, the trust can be amended so that it is a qualified charitable remainder trust, and "a deduction shall be allowed for such reformable interest" as if the trust had met the requirements of a charitable trust on the decedent's death. *Shriners,* 862 F.2d at 1562. This provision was made retroactive to include the period affecting the estate at issue in *Shriners. Id.* The legislative history of the statute included a statement that, " '[t]he amended trust is to be treated as a qualified charitable remainder trust not merely for deduction purposes *but for all purposes.' " Id.* at 1563 (citation omitted) (emphasis added). The statute provided in a note to 26 U.S.C. § 2055, however, that the government was prohibited from paying interest on refunded taxes under § 2055(e)(3) in the situation at issue in *Shriners. Id.* at 1562.

The Internal Revenue Service disallowed a charitable deduction made by the taxpayer estate in *Shriners* on its final federal tax return in 1979. The IRS assessed a deficiency and interest for late payment of the tax. The estate paid these amounts, and did not challenge the correctness of the decision under the law then in effect. *Id.*

When the law was amended in 1984 to allow the charitable deduction, the estate claimed a refund for the tax and interest paid. The government conceded that the estate was entitled to the return of the tax paid, but refused to refund the interest. *Id.* The estate filed suit in the Claims Court, which dismissed the complaint. Without citing *Seeley,* the Claims Court used similar reasoning, finding that the estate must pay interest on the deficiency because

> Congress indicated no desire to distinguish between an estate which timely paid the full taxes legally due and one that claimed an erroneous deduction and waited for the IRS to 'catch up with it' on audit.... To permit the latter taxpayer to recover any portion of the time-value of money completely denied to its more punctual counterpart would, in effect, reward the late payment of taxes. The court cannot ascribe to the statute such an unbalanced

result in the absence of clear evidence that such was Congress' aim.

*Shriners Hospitals for Crippled Children v. United States,* 14 Cl.Ct. 51, 54 (1987).

The Federal Circuit reversed, finding that although Congress specifically relieved the government of its obligation to pay interest on refunds of overpayments of tax in this situation, the taxpayer did not owe interest for late payment of the tax, because "the congressional intent of reformation for all purposes" requires that the tax be treated as if it were never due. *Shriners,.* 862 F.2d at 1563. The court distinguished *Seeley* on the ground that in that case,

> [t]he subsequent change in law did not change Seeley Tube's tax obligation for the year in question; it merely allowed Seeley Tube to carry back subsequent losses, thereby reducing the amount of tax owed.
>
> In contrast, 26 U.S.C. § 2055(e)(3) eliminated the basis of the tax obligation. By reformation of the will, it was as if no tax had ever been due. It would contravene Congress' intent to give retroactive effect to this provision for all purposes, to assess interest on late or underpayment of a tax that was not owed.

*Id.* at 1564. The Federal Circuit further explained that the estate's "recovery of interest paid on a tax that, by retroactive reformation of the will, was not owed" fulfilled the conditions set forth by the Supreme Court in *Koppers* for a finding that a taxpayer did not owe interest on an underpayment. The taxpayer must show that the tax relief granted under the statute is " 'necessarily retroactive, extinguishing the deficiency as of the original due date of the tax and thus eliminating the interest charges ...' " *Id.* at 1563, *quoting Koppers,* 348 U.S. 254, 263, 75 S.Ct. 268, 273–73. The Federal Circuit also noted that its decision was in accord with *Oxford Orphanage, Inc. v. United States,* 775 F.2d 570 (4th Cir.1985).

In the present case, it is not necessary to look to legislative history, as the Federal Circuit did in *Shriners,* for a clear legislative expression that interest is not to be imposed on underpayments of tax that are later satisfied by foreign tax credits based upon for-

eign tax carrybacks. The intent of Congress can be discerned from the plain language of the statute. Congress provided in § 904(c) that the carryback of the credit for excess foreign tax paid "shall be deemed taxes paid or accrued" in the earlier year. Under § 904(c), therefore, Fluor's tax obligation for 1982 was changed; it was reduced by the foreign tax carried back which was "deemed" paid in 1982.

The fact that § 6611(g) specifically provides that the taxpayer is not entitled to interest on an overpayment resulting from a carryback of foreign taxes does not change the fact that the carrybacks are otherwise "deemed" paid in the preceding year. The Federal Circuit similarly found in *Shriners* that the "for all purposes" language in the legislative history of the statute at issue in that case was subject to the specific exception delineated in the statute for interest on overpayments.

## CONCLUSION

There is a clear legislative expression of intent that, notwithstanding the general rule of § 6601(a), interest is not to be imposed on underpayments of tax that are later satisfied by foreign tax credits based upon foreign tax carrybacks. The court accordingly grants plaintiff's motion for summary judgment and denies defendant's motion for partial summary judgment. In accordance with the stipulation of the parties, the court finds for the plaintiff for tax year 1982 in the amount of $2,403,756.85 in interest paid, plus statutory interest of $235,096.43 accrued through April 15, 1992, plus interest from April 15, 1992. After tax years 1978 and 1981 are settled with regard to liability and tax computations, the clerk shall enter judgment for the plaintiff for tax year 1982 in accordance with the stipulation of the parties. Each party shall bear its own costs.