**FLUOR CORPORATION AND AFFILIATES, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 96–5130.**

United States Court of Appeals, Federal Circuit.

Decided Aug. 19, 1997.

Amended Oct. 17, 1997.

Rehearing Granted; Suggestion for Rehearing In Banc Declined Oct. 30, 1997.

---

Stanford G. Ross, Arnold & Porter, Washington, DC, argued for plaintiff-appellee.

Charles Bricken, Attorney, Tax Division, Department of Justice, argued for defendant-appellant. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and Richard Farber, Attorney. Of counsel was Murray S. Horwitz, Attorney.

Before NEWMAN, CLEVENGER, and BRYSON, Circuit Judges.

### ORDER

A petition for rehearing having been filed by the APPELLEE, and a response thereto having been invited by the court and filed by the APPELLANT,

UPON CONSIDERATION THEREOF, it is

ORDERED that rehearing be granted for the limited purpose of modifying this court's opinion.

IT IS FURTHER ORDERED that the previous opinion of the court in this appeal is withdrawn. The new opinion accompanies this order.

Before CLEVENGER, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This tax case presents the question whether a taxpayer is liable for interest on a tax deficiency when the deficiency is later erased by a foreign tax carryback. The Court of Federal Claims held that the effect of the carryback was to release the taxpayer from both the tax underpayment and interest on that underpayment. We hold that while the foreign tax carryback eliminated the original tax deficiency for taxable year 1982, it did not release the taxpayer from the obligation to pay interest on that tax deficiency, and we therefore reverse.

### I

#### A

Under prescribed circumstances, the Internal Revenue Code allows a "foreign tax credit" to U.S. taxpayers. See 26 U.S.C. § 901(a). For domestic corporate taxpayers, the credit is equal to "the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." 26 U.S.C. § 901(b)(1). The Code, however, limits the amount of the foreign tax credit that can be taken in a particular year. Specifically, the ratio of the foreign tax credit to the taxpayer's pre-credit United States tax liability cannot exceed the ratio of the taxpayer's taxable income from the foreign country to the taxpayer's total taxable income. See 26 U.S.C. § 904(a). For cases in which the ceiling on the amount of the credit that can be taken in a particular year is too low to exhaust the amount of the credit available to the taxpayer, the Code permits the excess foreign tax to be carried back to the two preceding taxable years, and then carried forward to each of the five succeeding taxable years until the excess foreign tax is exhausted. 26 U.S.C. § 904(c). The statute effects the carryover by providing that the foreign tax credit that is carried back or carried forward "shall be deemed taxes paid or accrued to foreign countries or possessions of the United States" in the carryover years. Id.

#### B

The pertinent facts of this case are not in dispute. Plaintiff, which we refer to as Fluor, is an affiliated group of corporations. For its tax year ending October 31, 1982, Fluor underpaid its federal income taxes, and the Internal Revenue Service assessed a deficiency for that year. In Fluor's 1984 tax year, it paid foreign taxes that generated a foreign tax credit under section 901. Because the full amount of its 1984 foreign tax credit could not be used in 1984, Fluor exercised its right under section 904(c) to carry a portion of the tax back to its 1982 tax year. Setting aside some of the details of the tax transactions at issue, the effect of the carryback of the excess 1984 foreign tax was to eliminate Fluor's 1982 tax deficiency.

The parties agreed that following the application of the tax credit Fluor was not liable for the tax deficiency that had been assessed for 1982. The parties did not, however, agree on whether Fluor was liable for interest on the deficiency that accrued prior to the time the credit became available. When the IRS insisted that Fluor was liable

for interest on the deficiency between 1982 and 1984, Fluor paid the interest and filed an action in the Court of Federal Claims seeking a refund. The Court of Federal Claims ruled in Fluor's favor, holding that Fluor was entitled to a refund of the assessed interest for the 1982 deficiency, plus interest on the refunded amount. The government has appealed that judgment to this court.

## II

 What is in dispute in this case is whether Fluor is liable for interest on the 1982 tax deficiency during the period between the time its 1982 taxes were due and the time its 1984 foreign tax credit was applied to eliminate the 1982 deficiency. Fluor argues, and the Court of Federal Claims agreed, that Fluor does not owe interest on the 1982 deficiency because the 1984 foreign tax credit must be treated as if it were a tax paid in 1982. Accordingly, Fluor argues, the foreign tax carryback from 1984 eliminated the 1982 deficiency *nunc pro tunc* and destroyed any justification for assessing interest charges for the deficiency against Fluor. The government, on the other hand, argues that the 1982 deficiency was not eliminated until the foreign tax credit became available in 1984. Accordingly, the government contends that it should not be deprived of its statutory right to interest on the deficiency during the period after the deficiency arose and before it was eliminated by the foreign tax carryback.

At the time this case arose and was litigated in the Court of Federal Claims, the Internal Revenue Code did not provide a clear answer to the question presented here. Congress, however, has recently amended the Code to include an explicit provision requiring that a taxpayer in Fluor's position pay interest on a deficiency that is subsequently eliminated by a foreign tax carryback. *See* Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 1055, 111 Stat. 788. That statutory change resolves the question presented in this case for all future years. Because the statutory change was made prospective only, however, it does not affect this case. To decide this case, which is governed by the pre–1997 version of the Code, we draw guidance from the principles announced in two closely analogous decisions of the Supreme Court and from the statutory context in which this issue arose.

### A

In the first of the two Supreme Court cases, *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), the government assessed a deficiency in Seeley's 1941 taxes, with interest from the date the taxes were due. Seeley later filed a return for 1943 in which it showed a net operating loss for that year. When carried back to 1941, the net operating loss was sufficient to eliminate Seeley's tax liability for that year. The Commissioner abated the deficiency, but refused to refund the interest that had been assessed on the deficiency.

The Supreme Court ruled that the Commissioner had properly withheld the interest on the deficiency, holding that the "subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency." 338 U.S. at 565, 70 S.Ct. at 388. For the period that the deficiency was outstanding, the Court explained,

the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed to the Government for the period it is owed must be answered in favor of the Government.

*Id.* at 566, 70 S.Ct. at 389.

The Court began its analysis by stating the general principle, evidenced by a number of statutory provisions, that "Congress intended the United States to have the use of money lawfully due when it became due." 338 U.S. at 566, 70 S.Ct. at 389. Thus, the Court noted, when the Commissioner assesses a deficiency "he also may assess interest on that deficiency from the date the tax was due to the assessment date." *Id.* The carryback

provision did not alter that principle, the Court explained, and it should not "be interpreted as deferring or delaying the prompt payment of taxes properly due." *Id.* at 567, 70 S.Ct. at 389

The Court found support for its position in the statute that prohibits a taxpayer who pays a tax that is later abated by a carryback from claiming interest from the government for the intervening period. That statute, the Court explained, makes it clear that Congress "did not intend to change the basic statutory policy: the United States is to have the possession and use of the lawful tax at the date it is properly due." 338 U.S. at 568, 70 S.Ct. at 390.

Finally, the Court stated that to sustain Seeley's contention "would be to place a premium on failure to conform diligently with the law." 338 U.S. at 568, 70 S.Ct. at 390. For if a taxpayer could avoid paying interest on a deficiency that was later canceled by a carryback, "a taxpayer who did not pay his taxes on time would receive the full use of the tax funds for the intervening period," while the taxpayer who paid his taxes promptly would be statutorily prohibited from having the use of the money for that period. *Id.* The Court concluded: "We cannot approve such a result." *Id.*

Five years later, in *United States v. Koppers Co.*, 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955), the Court reached a similar result in a case involving an abatement of two corporations' excess profits tax liabilities. The abatements were effected pursuant to a statute that provided relief from excess profits taxes under certain circumstances. The two corporations were assessed deficiencies in their excess profits tax payments for certain years. The deficiencies, however, were eliminated when each of the corporations applied for and obtained an adjustment in the average base period net income from which their excess profits taxes were calculated for those years.

Following the elimination of the deficiencies, the corporations argued that the interest that had accrued on the deficiencies should abate. The Supreme Court disagreed. As in *Seeley Tube*, the Court held that the adjustment in the taxpayers' obligations did not have the effect of releasing the taxpayers from the duty to pay interest on the original obligations until the time that they were reduced.

In order to obtain a refund of the interest due on the prior tax deficiency, the Court held, "the taxpayer must sustain the proposition that the tax relief granted under [the adjustment provision] is necessarily retroactive, extinguishing the deficiency as of the original due date of the tax and thus eliminating the interest charges for the corresponding period." *Koppers*, 348 U.S. at 263, 75 S.Ct. at 272. Finding that the taxpayers had not satisfied their burden of showing that the adjustment provision was intended to eliminate the interest charges as well as the deficiency for the earlier year, the Court held that the government was entitled to interest on the deficiency for the period up to the time the deficiency was eliminated. *See* 348 U.S. at 270–71, 75 S.Ct. at 276–77.

*Seeley Tube* and *Koppers* provide powerful support for the government's position in this case. As in *Seeley Tube*, Fluor's deficiency was eliminated by a subsequent carryback. Like the taxpayers in *Seeley Tube* and *Koppers*, Fluor is subject to a general statute requiring taxpayers to pay their taxes on the date they are due or to pay interest on any deficiency until it is satisfied. As in *Seeley Tube* and *Koppers*, there is no statute specifically addressing whether the government is entitled to interest on the taxpayer's deficiency for the period before it was eliminated by the carryback. As in both *Seeley Tube* and *Koppers*, however, there is a statute that denies taxpayers the benefit of interest for the interim period if the adjustment results in an overpayment of taxes attributed to the earlier tax year.

More important than the factual similarities, *Seeley Tube* and *Koppers* establish the analytical framework for this case. *Seeley Tube* took as its starting point the principle, based on the general deficiency interest statute, now codified at 26 U.S.C. § 6601(a), that a taxpayer must pay interest on a deficiency until the deficiency is paid or otherwise abated. Any departures from that principle, the Court explained, would require "a clear legislative expression to the contrary." 338 U.S. at 566, 70 S.Ct. at 389. In the absence of

such a clear legislative expression, the Court noted, "the question of who should posses the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government." *Id.* Echoing the test set out in *Seeley Tube,* the Court in *Koppers* held that in order to avoid having to pay interest on a deficiency that was subsequently eliminated, the taxpayer "must sustain the proposition" that the tax relief in question was "necessarily retroactive, extinguishing the deficiency as of the original due date and thus eliminating the interest charges for the corresponding period." *Koppers,* 348 U.S. at 263, 75 S.Ct. at 272.

A principal theme of both *Seeley Tube* and *Koppers* was that the taxpayers' argument, if accepted, would treat delinquent taxpayers better than taxpayers who complied with their legal obligations by paying their taxes on a timely basis. As the Court stated in *Koppers,* "we find nothing to justify a greater tax advantage to any taxpayer that underpays its correct tax, over one that pays such tax in full when due." 348 U.S. at 263, 75 S.Ct. at 272.

### B

Fluor does not dispute the government's contention that Fluor's proposed construction of the foreign tax carryback statute would benefit delinquent taxpayers over taxpayers who paid their taxes in full when due. Nor does Fluor take issue with the government's submission, based on *Seeley Tube* and *Koppers,* that Fluor bears the burden of pointing to a "clear legislative expression" to free the taxpayer of the obligation to pay interest on a deficiency that is later eliminated by a foreign tax carryback. Fluor argues, however, that it has met that burden, and that the benefit enjoyed by delinquent taxpayers is simply a necessary consequence of the statutory scheme that Congress enacted. We disagree.

### 1

Fluor first argues that the plain language of section 904(c) provides the "clear legislative expression" required by *Seeley Tube* and *Koppers.* The pertinent language of section 904(c) directs that the manner in which the tax carryback operates is that the excess

foreign taxes "shall be deemed taxes paid or accrued" in the applicable carryback year.

The ordinary meaning of the word "deemed" in the legal context is "considered" or "treated as if." *Black's Law Dictionary* 415 (6th ed.1990); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 254 (2d ed.1995). The word "deemed" is used interchangeably with the words "treated as" in a closely associated provision of the Code, 26 U.S.C. § 902(a), and the legislative history of section 904(c) confirms that the statute uses the word "deemed" in that sense. *See* H.R.Rep. No. 85–775, at 82 (1957) (the excess of the foreign taxes to be carried back or forward for any taxable year "is first to be considered as tax paid or accrued" in the second preceding year; foreign taxes carried back two years are "considered as tax paid or accrued in the second preceding year").

We thus can be confident that when Congress used the word "deemed," it meant "treated as if," and that a foreign tax paid in a particular year would be treated as if it were paid in another year. Indeed, that interpretation is necessary to effect the reduction of a deficiency in a carryback year. Moreover, it is necessary to ensure that the limitations on the amount of the foreign tax credit that can be taken in any given year, *see* 26 U.S.C. § 904(a), will apply to the carryover years, just as they do to the year in which the tax is actually paid or accrued. But while interpreting the word "deemed" to mean "treated as if" answers the question of what year the credit will be applied to, it does not answer the question of when the reallocation of the foreign tax credit will be deemed to occur—whether in the carryback year or at the time the carryback was generated, one or two years later. If the reduction in the deficiency is considered to have occurred in the carryback year, it does not make sense to assess interest on the deficiency. But if the reduction in the deficiency is considered to have occurred at the time the carryback was generated, it makes sense that interest should be assessed on the deficiency during the time it was outstanding. We are thus confronted with an ambiguity as to whether Congress meant the language of section 904(c) to forbid the assessment of

interest on a previous tax deficiency that is erased as a result of the foreign tax carryback.

Unfortunately, there is nothing in the language of section 904(c) or its legislative history that addresses this ambiguity. In fact, the statute and the legislative history give no indication that the "deemed taxes paid" formula was intended in any way to address the government's right to interest in the period between the assessment and cancellation of a deficiency.

The Supreme Court addressed a similar statutory ambiguity in the *Koppers* case, and the Court's treatment of the statute at issue in that case is instructive. The statute in *Koppers* provided that if the taxpayer, after being assessed excess profits taxes for a particular year, should later establish "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income," the taxpayer's excess profits tax would be determined "by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter." 26 U.S.C. § 722(a) (1940). Pointing to the statutory provision that a constructive average base period net income would be used "in lieu of" the originally calculated average base period net income, the taxpayers argued that Congress meant the statute to be fully retroactive in effect, and that the statute therefore required both a reduction in the excess profits tax and elimination of the interest due on the underpayment of the originally assessed tax. The Court, however, regarded the pertinent language as "elastic," and as capable of being read to mean either that "the new computation replaces and abates the old one currently, when the new one is determined and assessed," or that it "retroactively replaces the old tax from its original due date." 348 U.S. at 264, 75 S.Ct. at 273.

The same must be said of the closely analogous language of section 904(c). As we have noted, section 904(c) does not make clear whether Congress envisioned the foreign tax credit as replacing and abating the prior tax deficiency as of the time the foreign tax credit is applied to the carryover year, or as replacing the prior deficiency "from its original due date." *Koppers,* 348 U.S. at 264,

75 S.Ct. at 273. We therefore agree with the government that in this case, as in *Koppers,* we must look beyond the language of section 904(c) to determine whether the taxpayer is liable for deficiency interest.

The first step in analyzing the statutory framework that governs this case is to look to the general provision for deficiency interest, 26 U.S.C. § 6601(a). That statute requires a taxpayer to pay interest on any deficiency from the time the deficiency arises until it is paid or otherwise abated. At the time payment was due for its 1982 taxes, Fluor did not make the required payment. The government was therefore deprived of that money for the period between the time the 1982 tax deficiency should have been paid and the time the deficiency abated by operation of the foreign tax credit. Without more explicit directions regarding interest, section 6601(a) compels the conclusion that the government is entitled to interest for that interim period. Because section 904(c) does not supply an explicit and unambiguous exception to the rule of section 6601(a) for foreign tax carrybacks, the rule of section 6601(a) must control.

The other pertinent statutory provision is 26 U.S.C. § 6611(g), which provides that the government shall not be liable for interest when a foreign tax carryback creates an overpayment by the taxpayer in the carryback year. Both *Seeley Tube* and *Koppers* relied heavily on analogous statutes that denied interest on overpayments created by the carryback or adjustment at issue in those cases, and the same analysis is equally applicable here. In *Seeley Tube,* the Court regarded the statute that denies interest on an overpayment created by a carryback as "amply support[ing]" the Court's conclusion that the carryback provision did not "retroactively alter the duty of a taxpayer to pay his full tax promptly." 338 U.S. at 567, 70 S.Ct. at 389. The statutory denial of interest on overpayments, the Court added, made it clear that Congress "did not intend to change the basic statutory policy: the United States is to have the possession and use of the lawful tax at the date it is properly due." *Id.* at 568, 70 S.Ct. at 390.

*Koppers* placed equally heavy weight on the statutory denial of interest on overpayments created by the adjustment at issue in that case. By precluding the payment of interest by the government on the amounts abated, the Court explained, the statute

> treats the Government as entitled to the use of the abated amounts between the time of their overpayment and that of their abatement. Equity demands a comparable result in the case of underpayments. Where unpaid taxes are abated by reason of [the adjustment statute], the taxpayer then receives a release from its existing obligation to pay the amount abated. However, the Government having been entitled, up to that time, to collect and use the sum abated, the Government should receive interest on the abated sum, for the period during which the Government was entitled to have its use. This is the natural counterpart of the Government's freedom from paying interest on refunded overpayments.

348 U.S. at 267. Applying that analysis here, we conclude that the "natural counterpart" of the government's freedom under section 6611(g) from paying interest on refunded overpayments attributable to a foreign tax carryback is that the taxpayer must pay interest on the deficiency for the period up to its elimination.

Fluor seeks to blunt the impact of *Seeley Tube* and *Koppers* by invoking this court's decision in *Shriners Hospitals for Crippled Children v. United States,* 862 F.2d 1561 (Fed.Cir.1988). In that case, the court held that a remedial estate tax statute was intended to be fully retroactive and that the taxpayer therefore did not owe interest on a tax obligation that was eliminated by the statutory adjustment. The statute at issue in the *Shriners* case provided that under certain circumstances a will would be deemed reformed in a manner that avoided estate taxes that otherwise would have been due. The question on appeal was whether the estate was liable for interest on the taxes that were avoided as a result of the reformation.

Looking to the legislative history and the purpose underlying the statute, the court held that it was intended to be fully retroactive in its effect and thus to relieve the taxpayer of the obligation to pay both the prior tax deficiency and the interest on that deficiency. The court placed special reliance on evidence in the legislative history indicating that Congress's intent was to make the statute retroactive "for all purposes," and to ensure that a will that qualified for beneficial treatment under the statute would be "treated for tax purposes as if the amended trust was actually in the will ... as of the date of the decedent's death." 862 F.2d at 1563 (quoting 130 Cong. Rec. 19,042 (1984) (statement of Rep. Gibbons)). *See also Oxford Orphanage, Inc. v. United States,* 775 F.2d 570 (4th Cir.1985).

No such clear guidance can be found in the language or legislative history of section 904(c). Because there is no "clear legislative expression" of intent to permit taxpayers to avoid paying interest on their deficiencies if they later become eligible for a carryback under section 904(c), *see Seeley Tube,* 338 U.S. at 566, 70 S.Ct. at 389 the foreign tax carryback statute must be construed not to alter the basic rule that interest is due when a taxpayer underpays its taxes.

2

In challenging the government's reliance on *Seeley Tube* and *Koppers,* Fluor points out that the 1954 Internal Revenue Code has more detailed provisions governing interest than did the 1939 Code, under which both *Seeley Tube* and *Koppers* were decided. The more comprehensive treatment of interest under the 1954 Code, Fluor argues, compels the conclusion that Congress would have specifically required taxpayers to pay interest on deficiencies that are subsequently canceled by foreign tax carrybacks if it had intended for interest to be payable in that setting.

It is true that the 1954 Code addresses the issue of interest in more detail than did the 1939 Code, but the differences between the two statutes do not render *Seeley Tube* and *Koppers* inapposite, because the principal statutory provisions are largely the same. First, section 6601(a), the general provision in the 1954 Code requiring the payment of interest to the government on underpayments of tax, is similar to the parallel provision of the 1939 Code. In addition, as we have noted, the 1939 Code contained a prohi-

bition against government liability for interest when the operation of the carryback and adjustment provisions in *Seeley Tube* and *Koppers* created a tax overpayment. That prohibition is closely analogous to the prohibition in section 6611(g) of the 1954 Code against government liability for interest on overpayments of tax resulting from the operation of the foreign tax carrybacks.

Fluor argues that Congress's enactment of a prohibition against refund interest on overpayments created by foreign tax carrybacks, in conjunction with Congress's failure to enact a parallel statute imposing deficiency interest on deficiencies eliminated by foreign tax carrybacks, gives rise to the inference that Congress did not mean to require interest to be paid on eliminated deficiencies. That argument, however, is foreclosed by *Seeley Tube* and *Koppers*, in which the Supreme Court drew the opposite inference from virtually identical statutory provisions barring the collection of interest from the government when carrybacks or adjustments created an overpayment.

Fluor points out that an explicit statutory provision in the present Code, 26 U.S.C. § 6601(d), authorizes the government to collect deficiency interest from taxpayers whose deficiencies are eliminated by net operating loss carrybacks, capital loss carrybacks, and credit carrybacks. Fluor argues that the absence of any similar provision with respect to foreign tax carrybacks as of the time pertinent to this case is further evidence that Congress meant to prohibit the assessment of deficiency interest on tax deficiencies that are eliminated by the operation of a foreign tax carryback.

While there is some force to that argument, in the end we do not find it persuasive. Section 6601(d) in effect codifies the rule of *Seeley Tube* and *Koppers* for all the carryback provisions that the statute covers. Fluor's argument is that because Congress codified the rule of *Seeley Tube* and *Koppers* for other carryback provisions, but not for the foreign tax carryback, the *Seeley Tube–Koppers* rule does not apply to the foreign tax carryback. We do not accept the contention that, by codifying the rule for some carrybacks, Congress must necessarily have meant to repudiate it for any carryback not included in the codification.

When the foreign tax carryover was enacted in 1958, section 6601(d) (which was then section 6601(e)) addressed only one form of carryback—the net operating loss carryback. It was not until later that Congress converted section 6601(d) into a catchall provision imposing deficiency interest in the case of all subsequently enacted carryback statutes. Because no such catchall provision existed in 1958, Congress's failure to alter the single-purpose section 6601(e) at that time to include a reference to foreign tax carrybacks does not compel the conclusion that Congress intended to prohibit the collection of deficiency interest in the case of foreign tax carrybacks.

■ In fact, the background of the foreign tax carryover supports the contrary inference. Familiar principles of statutory construction teach that Congress is presumed to be aware of judicial interpretations of the law, and that when Congress enacts a new statute incorporating provisions similar to those in prior law, it is assumed to have acted with awareness of judicial interpretations of the prior law. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982); *Lorillard v. Pons*, 434 U.S. 575, 589, 98 S.Ct. 866, 875, 55 L.Ed.2d 40 (1978); *Kelly v. United States*, 826 F.2d 1049, 1052 (Fed.Cir.1987). That principle applies with special force in this context, because when Congress enacted the foreign tax carryover provision in 1958, *Seeley Tube* and *Koppers* were decisions of recent vintage and can be assumed to have been known to the drafters of the complex tax bill of which the foreign tax carryover was a part. It is therefore reasonable to assume that Congress intended the rule of *Seeley Tube* and *Koppers* to apply to the closely analogous foreign tax carryovers, and thus for interest to be due on any deficiency that was eliminated as a result of the foreign tax carryover. Because the rule of *Seeley Tube* and *Koppers* did not depend on specific legislation imposing deficiency interest, Congress had no need to legislate in order to ensure that deficiency interest would be imposed. Indeed, the contrary was true: In light of *Seeley Tube* and *Koppers*, an informed Congress would have assumed that

specific legislation would be required if it intended deficiency interest not to accrue when a carryback eliminated a deficiency in the carryback year.

### 3

Fluor makes the further argument that *Seeley Tube* and *Koppers* can be distinguished because the policy underlying the statutes at issue in *Seeley Tube* and *Koppers* is quite different from the policy underlying the statute at issue in this case. The statutes in *Seeley Tube* and *Koppers*, Fluor argues, were averaging statutes that were designed to spread tax benefits from a single year over a longer period. In contrast, Fluor contends, the policy underlying section 904(c) is one of "matching," *i.e.*, attempting to match the foreign tax credit with the year in which the credit most appropriately belongs for domestic tax purposes.

Fluor is correct that one of Congress's purposes in allowing foreign tax carryovers was to mitigate distortions that can result from differences in the rules for accrual of income under U.S. and foreign tax systems. *See* H.R.Rep. No. 85–775, at 27–28 (1957); Staff of the Joint Committee on Taxation, *Summary of the Technical Amendments Bill of 1958 (Part Two)* 5 (1958). Even if that were the sole purpose behind section 904(c), however, it would not answer the question whether foreign tax carrybacks cancel the deficiency interest that would be due on any deficiency eliminated by the carryback. The fact that Congress wanted to allow some room for matching foreign tax credits with the recognition of corresponding income under the U.S. tax system does not mean that Congress wanted to allow taxpayers to use foreign tax carrybacks to avoid the normal consequences of tax underpayments in prior years. In fact, section 6611(g), which bars taxpayers from obtaining refunds on overpayments generated by foreign tax carrybacks, is proof that Congress did not regard the matching function of section 904(c) as sufficient to call for treating foreign tax carrybacks as generally retroactive for interest purposes. Moreover, Congress's recent amendment of section 6601(d) to include an explicit requirement that deficiency interest be paid on deficiencies eliminated by foreign tax carrybacks undercuts Fluor's argument

that Congress's earlier failure to include foreign tax carrybacks in section 6601(d) was based on a perceived difference between the policy underlying the foreign tax carryover and the policies underlying other carryover provisions.

Carryover provisions all afford benefits to the taxpayer, and they often do so by tempering the distortions that would result from limiting the deduction or credit to a single taxable year. "Matching" is one way section 904(c) accomplishes that end; another is by spreading the effects of unusually high foreign taxes across an eight-year period, a form of averaging. *See* Elisabeth A. Owens, *The Foreign Tax Credit* 279 (1961). But that does not mean that such provisions must be regarded as fully retroactive for purposes of determining interest obligations. The statutory provision at issue in *Koppers*, for example, was designed to cure distortions in the base period net income that was used to calculate excess profits taxes. Nonetheless, the Supreme Court did not regard the ameliorative purpose of the statute as justifying the creation of an exception to the general rule requiring that interest accrue on tax deficiencies until they are paid. The purposes underlying section 904(c) likewise do not call for giving full retroactive treatment to foreign tax carrybacks.

### 4

■ Fluor next contends that the Internal Revenue Service has not previously imposed interest on deficiencies eliminated by the foreign tax credit, and that its failure to do so until now should be regarded as a longstanding administrative recognition that interest is not chargeable in this setting. This is not a case, however, in which the Service is attempting to reverse a position it has long taken in construing a tax statute. So far as the record reflects, the Service did not take a position on this issue until 1992, at which time it took the position it has taken throughout this litigation. We are unwilling to treat as established administrative practice what amounts to no more than a failure to advert to the issue at a policymaking level.

Finally, Fluor argues that Congress's failure to specify a time at which the accrual of interest would terminate is evidence that Congress did not intend to assess interest on deficiencies eliminated by foreign tax carrybacks. It is true that the rule advocated by the government leaves us with the task of determining—without explicit congressional guidance—when the accrual of interest for Fluor's eliminated deficiency should stop running. That, however, is simply a consequence of Congress's having relied on the principles of *Seeley Tube* and *Koppers* rather than having legislated specifically on this subject.

The same problem was presented to the Supreme Court when it adopted the approach to interest that it employed in *Seeley Tube*, and the Court did not regard that problem as persuasive evidence that Congress meant to excuse the payment of interest on deficiencies in cases governed by that decision. We reach the same conclusion in this case.

### III

██ Having decided that Fluor must pay interest on its 1982 tax deficiency, we next address the question of when the accrual of interest stopped running. Fluor argues that if it must pay interest, the interest should have stopped accruing as of the end of the taxable year in which the foreign tax carryover became available, *i.e.*, on October 31, 1984. The government agues that the interest should run until the due date for Fluor's tax return for the year in which the foreign tax carryover became available, *i.e.*, January 15, 1985. On this issue, we agree with Fluor.

In 1958, when the foreign tax carryover statute was enacted, the statute governing interest on deficiencies eliminated by a net operating loss carryback provided that the accrual of interest would end at the close of the taxable year in which the carryover was generated. *See* 26 U.S.C. § 6601(e) (1958). The Code likewise provided at that time that refund interest on foreign tax carrybacks, as well as refund interest on net operating loss carrybacks, would begin to accrue at the end of the taxable year in which the carryback was generated. *See* 26 U.S.C. § 6611(f), (g) (1958). In light of those statutory provisions,

Congress presumably would have selected the same date for ending the accrual of deficiency interest with respect to foreign tax carrybacks if it had expressly addressed that subject in the 1958 legislation.

Although Congress in 1982 changed the timing rules for interest on carrybacks covered by section 6601(d), *see* Pub.L. No. 97-248, § 346(c), we decline the government's invitation to treat that legislative change as if it changed the period for calculating interest under the non-statutory deficiency interest rule applicable to foreign tax carryovers. There was no statutory change made in 1982 with respect to the foreign tax carryover, so we cannot attribute to Congress the intention to have the foreign tax carryover timing rules follow the 1982 legislative change in the rules applicable to other carryovers. We therefore direct the Court of Federal Claims on remand to ascertain the accrued interest based on an ending date of October 31, 1984, and to enter judgment premised on that ending date.

*REVERSED and REMANDED.*