111 T.C. No. 4

UNITED STATES TAX COURT

INTEL CORPORATION AND CONSOLIDATED SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 23010-89.                    Filed July 30, 1998.

P had deficiencies in its Federal income tax for
the taxable years 1979 and 1980.  From the taxable year
1981, P carried back an amount of foreign tax to 1979
and 1980.  From 1982, P carried back additional foreign
tax to 1980.  R computed interest under sec. 6601,
I.R.C. 1954, from the respective due dates of the
returns for 1979 and 1980 until the end of 1981 for the
deficiency amounts for 1979 and 1980, respectively,
eliminated by the carryback from 1981.  For the
deficiency amount in 1980 eliminated by the carryback
from 1982, R computed interest from the due date of the
return for 1980 until the due date of the return for
1982.  P filed a motion under sec. 7481(c), I.R.C.
1986, to redetermine interest.  <u>Held</u>, for the years at
issue, sec. 904(c), I.R.C. 1954, does not prevent

_____

[*]  This supplements <u>Intel Corp. v. Commissioner</u>, 100 T.C. 616
(1993), affd. 67 F.3d 1445 (9th Cir. 1995), amended and
superseded 76 F.3d 976 (9th Cir. 1996).

interest from being imposed on the deficiency without reduction by a foreign tax carryback from a subsequent year. Held, further, the interest on the deficiency amounts eliminated by the carryback from 1981 stops accruing as of the end of 1981, and the interest on the deficiency amount eliminated by the carryback from 1982 stops accruing as of the due date of the 1982 return. Cf. sec. 6611(g) (now sec. 6611(f)(2)), I.R.C. 1954, prior to and after the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 346(c), 96 Stat. 637.

Joel V. Williamson, Wayne S. Kaplan, Thomas L. Kittle-Kamp, Marjorie M. Margolies, and Robert H. Perlman, for petitioner.

Beth L. Williams and Ewan D. Purkiss, for respondent.

SUPPLEMENTAL OPINION

TANNENWALD, Judge:  A decision was entered in this case on December 9, 1993, pursuant to a stipulated computation, in accordance with this Court's opinion, Intel Corp. v. Commissioner, 100 T.C. 616 (1993), affd. 67 F.3d 1445 (9th Cir. 1995), amended and superseded 76 F.3d 976 (9th Cir. 1996).  On May 9, 1997, petitioner filed a motion under section 7481(c)[1] and Rule 261 to redetermine interest on the deficiencies for the 1979 and 1980 taxable years.

---

[1]  We refer to sec. 7481(c) of the Internal Revenue Code as in effect at the time petitioner's motion was filed.  Unless otherwise indicated, all other section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties agree that, for the taxable years 1979 and 1980, petitioner had foreign tax carrybacks from 1981 and 1982 as follows:

| Year Used | Amount | Year Originated |
|---|---|---|
| 1979 | $5,015,830 | 1981 |
| 1980 | 753,462 | 1981 |
|  | 4,574,958 | 1982 |

The parties disagree as to the effect, if any, of these carrybacks on the calculation of interest on the deficiencies for 1979 and 1980. The principal issue for decision is whether interest accrues on the portion of a deficiency that is eliminated by such carrybacks. If it does accrue, when does it end, i.e., at the close of the taxable year of the carryback or on the due date for the filing of the tax return for that year? We direct our attention, in the first instance, to the principal issue.

Section 6601(a) provides that interest shall be paid on the amount of tax not paid on or before the last date prescribed for payment for the period from such last date to the date paid. The last date prescribed for payment of income tax is generally the due date for filing the return without regard to any extension of time for filing. Sec. 6601(b)(1).

"In general, interest liability is determined under section 6601 synchronically, looking at the period during which interest

accrues, <u>without</u> reference to future events, such as loss or credit carrybacks."  <u>BankAmerica Corp. v. Commissioner</u>, 109 T.C. 1, 14 (1997).  Section 6601 reflects the "use of money" principle; "That is, the party who has the use of the money pays interest up until the event which causes the party no longer to have use of that money."  <u>Id.</u> at 14.  "In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government."  <u>Manning v. Seeley Tube & Box Co.</u>, 338 U.S. 561, 566 (1950).

In this latter connection, we are not persuaded by petitioner's argument that we should not give any consideration to the time-value-of-money element because that concept "can be applied only in the presence of a legislative directive to do so".  <u>City of New York v. Commissioner</u>, 103 T.C. 481, 487 (1994), affd. 70 F.3d 142 (D.C. Cir. 1995).  That language was used in analyzing the applicability of time-value-of-money substantive provisions of the Code.  Interest per se involves the time value of money, and, if a directive is needed, it can be found in section 6601(a).

Section 901 allows a taxpayer who so elects a credit, subject to the limitation of section 904, for the amounts of certain "taxes paid or accrued during the taxable year to any

foreign country or to any possession of the United States", plus those taxes deemed to have been paid under sections 902 and 960. Sec. 901(a) and (b)(1). The purpose of section 901 is to provide relief from U.S. taxation where income already has been taxed by another country. Perkin-Elmer Corp. & Subs. v. Commissioner, 103 T.C. 464, 470 (1994). Section 904(a) provides that the amount of the foreign tax credit "shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States * * * bears to his entire taxable income for the same taxable year." This limitation was enacted to prevent foreign tax credits from eliminating U.S. tax on U.S.-source income. Perkin-Elmer Corp. & Subs. v. Commissioner, supra at 470-471. Section 904(c) provides for carryback and carryover of any excess foreign taxes as follows:

> (c) Carryback and Carryover of Excess Tax Paid.--
> Any amount by which all taxes paid or accrued to
> foreign countries or possessions of the United States
> for any taxable year for which the taxpayer chooses to
> have the benefits of this subpart exceed the limitation
> under subsection (a) shall be deemed taxes paid or
> accrued to foreign countries * * * in the second
> preceding taxable year, in the first preceding taxable
> year, and in the first, second, third, fourth, or fifth
> succeeding taxable years, in that order and to the
> extent not deemed taxes paid or accrued in a prior
> taxable year, in the amount by which the limitation
> under subsection (a) for such preceding or succeeding
> taxable year exceeds the sum of the taxes paid or
> accrued to foreign countries * * * for such preceding
> or succeeding taxable year and the amount of the taxes
> for any taxable year earlier than the current taxable

year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year * * *

Petitioner argues that section 904(c) is a clear legislative expression that interest is not imposed on tax liability "paid" by foreign tax carrybacks, because such carrybacks are "deemed taxes paid or accrued to foreign countries * * * in" (emphasis added) the year to which they are carried back and no statutory provision exists that contradicts this plain language. Petitioner describes the various interest provisions in the Internal Revenue Code as detailed and complex and points to the absence of a specific interest provision concerning foreign tax carrybacks in situations involving deficiencies as significant in light of other provisions dealing with the question of interest on deficiencies involving other types of carrybacks. Respondent urges us to preserve symmetry between the treatment of interest on deficiencies with that of interest on overpayments in the foreign tax carryback situation, in keeping with Manning v. Seeley Tube & Box Co., supra; United States v. Koppers Co., 348 U.S. 254 (1955), and the recently decided Fluor Corp. & Affiliates v. United States, 126 F.3d 1397 (Fed. Cir. 1997).

We begin our analysis of the scope of the language of section 904(c) mindful of our observations in Hospital Corp. of Am. v. Commissioner, 107 T.C. 73, 84-85 (1996):

> The language of a statute * * * cannot be viewed in isolation. In construing the meaning of [a] section * * *, it is necessary to consider all of the words of

the statute as well as their context, the purposes of the law, and the circumstances under which the words were employed.  Furthermore, we must view the statute in context as a whole and with a view to its place in the overall statutory scheme.  [Citations omitted.[2]]

Prior to 1942, there were no carrybacks of any kind, and therefore there was no problem in respect of interest on any overpayment or reduced underpayments attributable to carrybacks.

Section 153(a) of the Revenue Act of 1942 (1942 Act), ch. 619, 56 Stat. 847, amended section 122(b) of the 1939 Code to provide for a 2-year carryback of net operating losses.  Section 204(b) of the 1942 Act, 56 Stat. 900, amended section 710(c) of the 1939 Code to provide a 2-year carryback of unused excess profit tax credit.  Section 153(d) of the 1942 Act, 56 Stat. 848, amended section 3771 by adding subsection (e) to eliminate any interest on an "overpayment" attributable to either of such carrybacks for the period prior to the filing of a claim for refund for such overpayment.  There was no comparable provision dealing with underpayments later reduced or eliminated by any

---

[2]  As will subsequently appear, we have included, in our historical recital of the statutory provisions dealing with interest and carrybacks, references to legislative actions subsequent to the time when sec. 904(c) was enacted.  In so doing, we emphasize that we have done so for the sake of presenting a full history, recognizing that actions of subsequent Congresses provide a "'hazardous basis for inferring the intent of an earlier one'".  Hawkins v. United States, 30 F.3d 1077, 1082 (9th Cir. 1994) (quoting United States v. Price, 361 U.S. 304, 313 (1961)).

such carryback, nor was there any comment in the legislative history adverting to such a situation.

The foregoing action by Congress was the subject of litigation culminating in <u>Manning v. Seeley Tube & Box Co.</u>, <u>supra</u>, involving the propriety of charging interest on a deficiency which was later reduced by a net operating loss carryback. The Supreme Court held that the taxpayer was liable for the interest, reasoning that the net operating loss carryback provision did not alter the taxpayer's duty to pay the full tax when due. The Supreme Court found support for its conclusion in section 3771(e) of the 1939 Code (the predecessor of section 6611(f) of the 1954 Code) which, as pointed out above, specifically prohibited the taxpayer from receiving interest on "any" overpayment created by the use of a net operating loss carryback for the period prior to filing a claim for refund of such overpayment.

The next step in the unfolding history came with the enactment of section 6601(d) of the 1954 Code, ch. 736, 68A Stat. 817, which codified the holding of <u>Manning v. Seeley Tube & Box Co.</u>, 338 U.S. 561 (1950). At the same time, Congress enacted section 6611(f) (now section 6611(f)(1)), which contained the provisions prohibiting interest in respect of an overpayment. 68A Stat. 819. Thus, symmetry was provided in respect of the obligation for interest resulting from the use of a net operating

carryback whether an underpayment or overpayment was involved.[3]
In one respect, the prior provision dealing with an overpayment
and its application to deficiencies by the Supreme Court in
Manning v. Seeley Tube & Box Co., supra, was changed in that the
commencement of the running of interest on an overpayment was
moved to the close of the taxable year of the loss. See infra p.
21.

In 1955, in United States v. Koppers Co., supra, the Supreme
Court held that relief in the form of a reduction in excess
profits tax did not release the taxpayer from the obligation to
pay interest on the original deficiency liability until the time
the reduction in tax occurred. Although the Code contained no
specific provision dealing with interest with respect to
deficiencies abated by the excess profits tax adjustment, the
Supreme Court, as in Manning v. Seeley Tube & Box Co., supra,
relied on the general deficiency interest provision (now section
6601(a)) and a provision prohibiting interest for the similar
period on overpayments created by such adjustment (now section
6611(f)).

When Congress enacted section 904(c) in the Technical
Amendments Act of 1958, Pub. L. 85-866, sec. 42(a), 72 Stat.

---

[3] The 1954 Code provision did not include unused excess profits
tax carrybacks presumably because the excess profits tax had
expired on Jan. 1, 1954.

1639, it also enacted section 6611(g) (now section 6611(f)(2)) which provided:

> if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the close of the taxable year under this subtitle in which such taxes were in fact paid or accrued.[4] [Technical Amendments Act of 1958, Pub. L. 85-866, sec. 42(b), 72 Stat. 1640.]

The legislative history sheds little light on the question now before us.  Beyond reiterating the above provisions, such history addresses only:  (1) The purpose of section 904(c), i.e.,  to eliminate the double taxation that could result from timing differences between the methods of reporting income of the United States and the foreign country and the foreign tax credit limitations existing at that time; and (2) the mechanics of determining the amounts of the foreign tax carryback and carryover to be applied to the appropriate years specified in section 904(c).  H. Rept. 775, 85th Cong., 1st Sess. (1957), 1958-3 C.B. 811, 837-838, 892-895.

Congress did not include in the 1958 legislation a provision, like the one it had enacted in 1954 for net operating

---

[4]  Sec. 6611(g) was amended, effective for interest accruing after Oct. 3, 1982, to replace "the close of the taxable year" with "the filing date (as defined in subsection (f)(3)) for the taxable year".  Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 346(c)(1)(D), 96 Stat. 637.  Sec. 6611(f)(3) defines "filing date" as the last date prescribed for filing the return, without regard to extensions.  See also discussion infra pp. 22-23.

loss carrybacks,[5] addressing the effect of foreign tax carrybacks on deficiency interest.

Between 1959 and 1982, Congress amended section 6601(d) and section 6611(f) several times in order to deal with the impact of various carrybacks on the running of interest on underpayments and overpayments. See Act of Nov. 10, 1978, Pub. L. 95-628, sec. 8(c)(2) and (c)(3)(A) and (B), 92 Stat. 3632; Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, sec. 202(d)(4)(C) and (D), 91 Stat. 150 (employee credit carrybacks); Tax Reform Act of 1976, Pub. L. 94-455, sec. 2107(g)(2)(C) and (D), 90 Stat. 1904 (WIN credit carryback attributable to investment tax credit carryback from subsequent year); Revenue Act of 1971, Pub. L. 92-178, sec. 601(d)(3) and (4), 85 Stat. 559 (work incentive credit carrybacks); Tax Reform Act of 1969, Pub. L. 91-172, sec. 512(e)(3)(C) and (4), 83 Stat. 641 (capital loss carrybacks); Act of Dec. 27, 1967, Pub. L. 90-225, sec. 2(e) and (f), 81 Stat. 731, 732 (unused investment tax credit arising from NOL carrybacks); Act of Sept. 2, 1964, Pub. L. 88-571, sec. 3(d) and (e), 78 Stat. 858 (carrybacks of certain unused deductions of life insurance companies); Revenue Act of 1962, Pub. L. 87-834, sec. 2(e)(2) and (3), 76 Stat. 971, 972 (1962) (investment credit carrybacks).

---

[5] Sec. 6601(d)(1); see _supra_ p. 8.

As is apparent, none of the legislative actions dealt with foreign tax carrybacks. In 1982, however, Congress did enact amendments to sections 6601(d) and 6611(f) substituting "the filing date * * * for" in place of "the last day of" or "the close of the taxable year". See Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 346(c)(1) and (2), 96 Stat. 637. Then, in 1984, those sections were further amended to take into account the elimination of the carryback of unused deductions of life insurance companies. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 211(b)(26) and (27), 98 Stat. 757. Finally, in 1997, Congress enacted section 6601(d)(2) in the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1055(a), 111 Stat. 944, effective for foreign tax carrybacks arising in taxable years beginning after August 5, 1997. Thus, although this provision is not applicable to the issue now before us, it moots this issue for the future.

The foregoing provides a background for our consideration of petitioner's arguments and the impact of a recent decision, Fluor Corp. & Affiliates v. United States, 126 F.3d 1397 (Fed. Cir. 1997), which involved the identical issue for decision herein. In that case, the Court of Appeals for the Federal Circuit concluded that the reasoning of Manning v. Seeley Tube & Box Co., 338 U.S. 561 (1950), and United States v. Koppers Co., 348 U.S. 254 (1955), applied and that the taxpayer was required

to pay interest on a deficiency in an amount unreduced by reason of the carryback of foreign taxes from later years.  The foundation of the Court of Appeals' decision was the general principle embodied in section 6601(a) that a taxpayer must pay interest on any deficiency, i.e., what he owes the Government, and that "Any departures from that principle * * * would require 'a clear legislative expression to the contrary'".  Fluor Corp. & Affiliates v. United States, 126 F.3d at 1400 (quoting Manning v. Seeley Tube & Box Co., 338 U.S. at 566). The Court of Appeals found that the ("deemed * * * paid * * * in") language of section 904(c) did not meet this standard and that there was no other sufficient evidence fleshing out the statutory language to justify a different result.  In reaching its conclusion, the Court of Appeals for the Federal Circuit found unpersuasive the arguments advanced by petitioner herein.  It is to these arguments that we now turn.

Petitioner insists that the language of section 904(c) is clear that the foreign tax carryback is deemed paid in the year to which it is carried back not only for purposes of computing the amount of the foreign tax credit for that year but for all purposes, including interest.  We disagree.  The critical language of section 904(c)("deemed * * * paid or accrued in") does no more than provide for taking the carryback into account and a methodology for calculating the amount of the carryback

which would be available.  It says nothing about any other

purpose and is thus distinguishable from <u>Shriners Hospitals for</u>

<u>Crippled Children v. United States</u>, 862 F.2d 1561, 1563 (Fed.

Cir. 1988), cited by petitioner, where it was clear that the

statute there involved was to be retroactive "for all purposes".

The Court of Appeals for the Federal Circuit cogently made the

appropriate distinction in <u>Fluor Corp. & Affiliates</u> when it

observed:

> while interpreting the word "deemed" to mean "treated
> as if" answers the question of what year the credit
> will be applied to, it does not answer the question of
> when the reallocation of the foreign tax credit will be
> deemed to occur--whether in the carryback year or at
> the time the carryback was generated, one or two years
> later.  * * *  We are thus confronted with an ambiguity
> as to whether Congress meant the language of section
> 904(c) to forbid the assessment of interest on a
> previous tax deficiency that is erased as a result of
> the foreign tax carryback.  [<u>Fluor Corp. & Affiliates</u>
> <u>v. United States</u>, 126 F.3d at 1401-1402.]

Thus, the phrase is ambiguous, and it is our task to

determine its meaning.  In so doing, we must find our way without

the benefit of any legislative history directed to this

ambiguity.  In this connection, we think it of some significance,

albeit tangential, that, in the Technical Changes Act of 1949,

ch. 720, 63 Stat. 891, Congress amended section 131(c) of the

Internal Revenue Code of 1939 to include a provision, reenacted

in section 905(c) of the 1954 Code, that, if a taxpayer received

a refund of foreign taxes for which credit had been claimed, the

taxpayer would have to pay interest on the deficiency thus

created only to the extent such interest was received from the foreign government. Petitioner seeks to draw some support for its position herein by contending that such action shows that, at the time of the 1958 amendments to section 904(c), Congress had limited interest on deficiencies attributable to a foreign tax credit. We do not agree. In the first place, no foreign tax carryback was involved. Secondly, if any inference were to be drawn from such action, it is that Congress assumed that interest on deficiencies involving foreign tax credits would be imposed and that limiting such interest was necessary in order to avoid double payment of interest on taxes paid on the same income. See H. Rept. 920, 81st Cong., 1st Sess. 3 (1948). It is a far cry to say that the objective of avoiding double payment of interest should be considered as blessing the position of petitioner herein, that no interest should be paid at all.

Petitioner argues that Congress' enactment of section 6611(g) (now section 6611(f)(2)), prohibiting interest on an overpayment, i.e., a refund, created by a carryback of foreign taxes, makes significant the failure to amend section 6601(d) to include such a carryback among the specified carrybacks which were not to reduce an underpayment, i.e., a deficiency, for the purpose of determining interest due. We decline to adopt petitioner's position. As the Court of Appeals for the Federal

Circuit explained in rejecting the same argument in <u>Fluor Corp. &</u>

<u>Affiliates v. United States</u>, 126 F.3d at 1404:

> While there is some force to that argument, in the end we do not find it persuasive.  Section 6601(d) in effect codifies the rule of <u>Seeley Tube</u> and <u>Koppers</u> for all the carryback provisions that the statute covers. Fluor's argument is that because Congress codified the rule of <u>Seeley Tube</u> and <u>Koppers</u> for other carryback provisions, but not for the foreign tax carryback, the <u>Seeley Tube-Koppers</u> rule does not apply to the foreign tax carryback.  We do not accept the contention that, by codifying the rule for some carrybacks, Congress must necessarily have meant to repudiate it for any carryback not included in the codification.

Nor are we prepared to reach a different conclusion because of the failure of Congress, in the ensuing years from 1958 to 1997, to take action in respect of interest on underpayments involving carrybacks of foreign taxes.  This position was also advanced and rejected in <u>Fluor Corp. & Affiliates</u>; the Court of Appeals for the Federal Circuit declared that Congress knew about <u>Manning v. Seeley Tube & Box Co.</u>, <u>supra</u>, and <u>United States v. Koppers Co.</u>, <u>supra</u>, and that since the rule of those cases:

> did not depend on specific legislation imposing deficiency interest, Congress had no need to legislate in order to ensure that deficiency interest would be imposed.  Indeed, the contrary was true:  In light of <u>Seeley Tube</u> and <u>Koppers</u>, an informed Congress would have assumed that specific legislation would be required if it intended deficiency interest not to accrue when a carryback eliminated a deficiency in the carryback year.  [<u>Fluor Corp. & Affiliates v. United States</u>, 126 F.3d at 1404-1405.]

Beyond the foregoing analysis, we again observe, see <u>supra</u> note 2, that, as a general rule, actions by subsequent Congresses

carry minimal weight.  We think this is especially the case where the attempt to use the record of legislative action, upon which petitioner relies, is directed to turning a legislative silence into an inferred relief from the overriding rule of section 6601(a) that interest is due on taxes owed to the Government. Our view in this regard is reinforced by the fact that when the rule of no reduction in computing an underpayment by virtue of a carryback of excess foreign taxes was enacted in 1997, see supra p. 12, the legislative history makes clear that it was intended to overrule the decision of the Court of Federal Claims in Fluor Corp. & Affiliates v. United States, 35 Fed. Cl. 520 (1996), which allowed a foreign tax carryback to reduce an underpayment for purposes of computing interest, and that the Congress believed that the rule should be the same for both underpayments and overpayments.  See H. Conf. Rept. 105-220, 575-576 (1997); S. Rept. 105-33, 178-179 (1997); H. Rept. 105-148, 551-552 (1997).[6] The committee reports specifically comment that no inference is to be drawn under prior law as to the proper computation of interest on an underpayment when there is a carryback of excess foreign taxes.

One final element in the more than 50 years of history is involved in resolving the principal issue before us.  Petitioner

---

[6]  The 1997 legislation was enacted before Fluor Corp. & Affiliates v. United States, 126 F.3d 1397 (1997), revg. 35 Fed.Cl. 520 (1996).

suggests on brief, but without any evidentiary support, that respondent adopted the interpretation advanced by petitioner and administratively reduced deficiencies by carrybacks of excess foreign taxes for the purpose of computing interest. Presumably, petitioner seeks to establish an administrative practice which could be taken into account in interpreting an ambiguous statute. See BankAmerica Corp. v. Commissioner, 109 T.C. at 16 (citing Hanover Bank v. Commissioner, 369 U.S. 672, 686 (1962)). A similar argument was made by the taxpayer in Fluor Corp. and rejected by the Court of Appeals for the Federal Circuit. See Fluor Corp. & Affiliates v. United States, 126 F.3d at 1405.

We have traveled a complicated path in an effort to discern an answer to the choice before us. That choice is whether: (1) We should hold for petitioner on the ground that there is a loophole which we should leave to Congress to close (as it has done for the future), or (2) we should hold for respondent on the ground that there is at most a "glitch" in the statutory framework and that the statutory provisions are sufficiently "elastic" (United States v. Koppers Co., 348 U.S. at 264), to accord, as the Court of Appeals for the Federal Circuit has done in Fluor, compelling effect to section 6601(a) and continued vitality to Seeley Tube & Box Co. and Koppers Co. so as to hold that an underpayment, i.e., deficiency, is not reduced by a carryback of foreign taxes for the purpose of computing interest.

We have been unable to perceive any persuasive reasons why carrybacks of excess foreign taxes should be treated differently where an underpayment rather than an overpayment is concerned. Petitioner has argued that, unlike other carrybacks, such as a net operating loss carryback, a "matching" rather than an "averaging" principle is involved. We are unimpressed. Such "matching" stemmed, according to petitioner, from a desire to mitigate distortions arising from differences in taxable years and accounting methods between the United States and foreign tax systems. We are not persuaded that such "matching" element dictates that we provide petitioner with the relief sought herein. The same matching principle, if applicable, would dictate that a taxpayer was entitled to interest on an overpayment as well as relief from interest on an unreduced underpayment. Again, a similar argument was made by the taxpayer in Fluor Corp. & Affiliates and rejected by the Court of Appeals for the Federal Circuit which stated:

> Even if that [matching] were the sole purpose behind
> section 904(c), however, it would not answer the
> question whether foreign tax carrybacks cancel the
> deficiency interest that would be due on any deficiency
> eliminated by the carryback. The fact that Congress
> wanted to allow some room for matching foreign tax
> credits with the recognition of corresponding income
> under the U.S. tax system does not mean that Congress
> wanted to allow taxpayers to use foreign tax carrybacks
> to avoid the normal consequences of tax underpayments
> in prior years. * * * [Fluor Corp. & Affiliates v.
> United States, 126 F.3d at 1405.]

The same rationale applies to other situations pointed to by petitioner where foreign tax credits are involved, e.g., a 10-year statute of limitations for refunds of such credits, the inapplicability of "quickie" refunds, and the relation back of deductions in respect of disputed foreign taxes.

The long and the short of the matter is that we think that the statutory provisions are not so explicit as to require us to conclude that Congress intended that interest be denied to a taxpayer on overpayments due to carrybacks of foreign taxes but that a taxpayer who fails to pay his taxes when due is relieved of interest on the ground that such carrybacks reduce his underpayment.  This result would be "eccentric" if not "absurd", adjectives that should be avoided when dealing with actions by the legislature.  See Dunn Trust v. Commissioner, 86 T.C. 745, 755 (1986).

As we see it, the principle of symmetry in respect of the obligation for interest owed to or by the Government is mandated by the historical development of legislative and judicial action. Such development has continued to reflect the continued vitality of Seeley Tube & Box Co. and Koppers Co..  We hold, as did the Court of Appeals for the Federal Circuit in Fluor Corp. & Affiliates, that an underpayment, i.e., a deficiency, is not reduced by a carryback of foreign taxes for purposes of computing interest.

This leaves us with the question of when the interest stops accruing on the portion of the reductions of the deficiencies attributable to the foreign tax carrybacks.  In the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 346(c), 96 Stat. 637, Congress changed the effective dates of carryback credits in all of the carryback interest provisions for both overpayments and deficiencies from the last day of the taxable year in which the credit arose to the due date for filing the return for that year.  This change was effective for interest accruing after October 3, 1982.

In Fluor Corp. & Affiliates v. United States, supra, the taxpayer used a foreign tax carryback from 1984 to offset a deficiency in its 1982 tax.  The Court of Appeals for the Federal Circuit held that the accrual of interest on the amount of the 1982 deficiency represented by the carryback ended as of the close of the taxable year in which the carryback became available, not on the due date of the taxpayer's return for that year.  Id. at 1406.  It selected the close of the taxable year, because that was the date in the interest provisions as they existed in 1958, when the foreign tax carryback and carryover provision (section 904(c)) was enacted.  The Court of Appeals reasoned:

> Although Congress in 1982 changed the timing rules
> for interest on carrybacks covered by section 6601(d),
> * * * , we decline the government's invitation to treat
> that legislative change as if it changed the period for

calculating interest under the non-statutory deficiency interest rule applicable to foreign tax carryovers. There was no statutory change made in 1982 with respect to the foreign tax carryover, so we cannot attribute to Congress the intention to have the foreign tax carryover timing rules follow the 1982 legislative change in the rules applicable to other carryovers. * * * [Id. at 1406.]

We find this approach difficult to understand. Having previously held that the absence of a specific statutory treatment did not preclude symmetrical treatment of interest on underpayments and overpayments, as articulated by Manning v. Seeley Tube & Box Co., supra, and United States v. Koppers Co., supra, a ruling that a deficiency for one year was not reduced by a foreign tax carryback from a later year for purposes of calculating interest due, the Court of Appeals for the Federal Circuit then proceeds to adopt an asymmetrical approach to the issue of when interest on the amount of the deficiency offset by the carryback ceases to accrue. In so doing, the Court of Appeals for the Federal Circuit considered the specific provision of section 6611(g) (now section 6611(f)(2)), dealing with cessation of interest in respect of foreign tax carrybacks where an overpayment was involved (see supra p. 9), a barrier to recognizing the filing date of the return rather than the close of the taxable year in which the carryback arose as the critical date where an underpayment was involved and there was no applicable specific statutory provision.

We are not persuaded that the absence of a specific statutory counterpart to section 6611(g) dealing with interest on overpayments (which was specifically amended by TEFRA) provides a sufficient basis for reaching the opposite result in respect of the applicable date when an underpayment is involved. Such a consequence, at the very least, suggests eccentric action by the Congress, a concept we are not prepared to adopt under the circumstances herein. See J.C. Penney Co. v. Commissioner, 312 F.2d 65, 68 (2d Cir. 1962), affg. 37 T.C. 1013 (1962). In short, with all due respect to the Court of Appeals for the Federal Circuit, we opt for the same symmetrical disposition of the cutoff date in respect of interest as was accorded the obligation to pay interest where an excess foreign tax carryback is involved.

Petitioner has excess foreign tax carrybacks from 1981 and 1982 to reduce its deficiencies for 1979 and 1980. The interest on the 1981 carryback is not affected by the TEFRA amendments. The carryback from 1981 became effective as of the last day of the taxable year 1981 (December 31, 1981), and the carryback from 1982 became effective as of the due date of the return for that year (March 15, 1983). We hold that the interest accrues until such dates as computed by respondent.

In keeping with the above holdings,

<u>An appropriate order</u>

<u>will be entered denying</u>

<u>petitioner's motion</u>.

Reviewed by the Court.

COHEN, CHABOT, SWIFT, JACOBS, GERBER, WELLS, RUWE, COLVIN, HALPERN, CHIECHI, GALE, and THORNTON, <u>JJ</u>., agree with this opinion.

PARR, BEGHE, LARO, and MARVEL, <u>JJ</u>., did not participate in the consideration of this opinion.