**Slip Op. 00-23**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-------------------------------------------------- x

FORMER EMPLOYEES OF CHAMPION   **:**
AVIATION PRODUCTS,

    **:**

        Plaintiffs,                 Court No. 98-02-00299

    **:**

      v.                     **:**

HERMAN, SECRETARY OF LABOR,

    **:**

        Defendant.

-------------------------------------------------- x

[Secretary of Labor's remand determination affirmed.]

Decided: February 25, 2000

Dewey Ballantine, L.L.P. (John A. Ragosta, Bradford L. Ward, Michael R. Geroe, David A. Bentley), for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Katherine A. Barski), Scott Glabman, Attorney, Office of the Solicitor, United States Department of Labor, of counsel, for Defendant.

## MEMORANDUM

**BARZILAY, J.**

### I. INTRODUCTION

This matter is before the Court following a remand determination by the Secretary of Labor[1] that

Plaintiffs are ineligible for trade adjustment assistance under the North American Free Trade Agreement

Transitional Adjustment Assistance program ("NAFTA-TAA"). In *Former Employees of Champion*

---

[1] Once again, the Court uses the terms Secretary and Labor interchangeably.

*Aviation v. Herman*, slip op. 99-48 (June 4, 1999) ("*Champion I*"), familiarity with which is presumed, the Court ordered Labor to reconsider its two prior negative determinations of Plaintiffs' eligibility for NAFTA-TAA. The Court remains dissatisfied with these current results, but is constrained from further action and therefore affirms the remand determination.

## II.  DISCUSSION

The Court remanded the case to Labor for two reasons. First, the Court was not satisfied that Labor had considered an important aspect of the problem, *i.e.*, whether the statute spoke to a "two-step" shift in production. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). A corollary concern was that the agency did not explain why it did not adopt an arguably consonant interpretation of the statute put forth by the Plaintiffs. *See International Union v. Reich*, 20 F. Supp. 2d 1288, 1293 (CIT 1998) (quoting *International Union v. Marshall*, 584 F.2d 390, 396 (D.C. Cir. 1978)).

Second, the Court was not satisfied that Labor conducted an adequate investigation. "[T]he nature and extent of the investigation are matters resting properly within the sound discretion of the administrative officials.'" *Former Employees of CSX Oil and Gas Corp. v. United States*, 720 F. Supp. 1002, 1008 (CIT 1989) (quoting *Cherlin v. Donovan*, 585 F. Supp. 644, 647 (CIT 1984)). However, failure by Labor to make reasonable inquiries constitutes good cause to remand for additional evidence gathering. *See Former Employees of Komatsu Dresser v. United States Secretary of Labor*, 16 CIT 300, 303 (1992).

*A.*      *The Remand Determination Addresses a Two-step Shift in Production.*

In *Champion I*, the Court expressed its concern that Congress' intent was not being fulfilled by Labor's shift in production analysis. *See Champion I* at 7 ("Reliance by the Secretary on product lines alone to determine what constitutes the appropriate subdivision . . . does not effectuate the expressed desire of Congress."). In the negative remand determination, Labor expressed its disagreement with the Court that a new methodology for determining the appropriate subdivision was warranted. *See* SAR 39.[2] While the Court remains wary of potential shortcomings in Labor's analysis, it cannot say that it is clearly at odds with the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984); *see also Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("A reviewing court must accord substantial weight to an agency's interpretation of a statute it administers."). Despite the Court's initial pronouncement that additional consideration of Congress' intent to expand worker coverage by adding the shift in production component to the statute was required, Labor maintains that the intent to expand the program does not mean Congress intended to abrogate terms with a well-established judicial meaning. *See* SAR at 39. Accordingly, the Court has further examined the legislative history in light of Labor's position and determined that it is not sufficiently clear to enable the Court to determine that Labor's methodology is contrary to Congress' will expressed through use of the term "articles" in the statute. *See Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 233 (1986).

Since the Court is faced with an executive agency's interpretation of a statute it is entrusted to

---

[2] Labor did, however, rely on something more than product lines alone to determine what constituted the appropriate subdivision in this instance. *See* discussion *infra* at 7.

administer, *Chevron* requires first looking at the words of the statute. *See Chevron*, 467 U.S. at 842. Section 222 of the Trade Act of 1974 (*as amended by* NAFTA Transitional Adjustment Assistance Act (19 U.S.C. § 2331 (1994))), contains a provision that provides relief to workers who lose jobs because of a shift in production to Canada or Mexico. *See* 19 U.S.C. § 2331(a)(1)(B). The Secretary of Labor is directed to certify workers as eligible to apply for trade adjustment assistance if "there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of *articles* like or directly competitive with *articles* which are produced by the firm or subdivision." *Id.* (emphasis added).

Plaintiffs made a forceful argument that Labor should consider the traditional factors of production, land, labor and capital, in determining what constitutes the appropriate subdivision in a shift in production case. In *Champion I*, the Court expressed its belief that such an approach would be consistent with the statutory purpose of providing relief to workers whose firms or subdivisions shifted production to Canada or Mexico. Plaintiffs argue that the present statutory framework does not account for situations when a shift in production occurs in more than one step. If a company moves production of articles that are neither like nor directly competitive from Plant A to Plant B in the United States and from Plant B to Plant C in Mexico then closes Plant A, the workers in Plant A will not be eligible for trade adjustment assistance even though their jobs were lost through a "two-step" shift in production. Labor asserts that workers at Plant A would not be eligible for trade adjustment assistance because the statute limits the comparison to the articles being produced and requires that they be like or directly competitive. *See* 19 U.S.C. § 2331(a)(1)(B). Plaintiffs respond that the result is absurd and that Congress could not have intended it, and therefore, Labor must look at shifts in land, labor and capital in determining whether a shift in production occurred.

While this is a case of first impression as to the proper interpretation of the shift in production criteria

of the statute, the provision at issue contains language that has received judicial construction. The court has interpreted the relevant language in section 222 of the Trade Act of 1974 (19 U.S.C. § 2272) to mean that a "determination of what constitutes the appropriate subdivision must be made along product lines." *Abbott v. Donovan*, 570 F. Supp. 41, 48 (CIT 1983) (and cases cited). Labor maintains that absent clear legislative history to the contrary, Congress, by placing identical language in 19 U.S.C. § 2331(a)(1)(B), is presumed to have adopted these judicial constructions, thereby requiring shifts in production to be measured along product lines. *See Francis v. Southern Pac. Co.*, 333 U.S. 445, 450 (1948); *see also Fluor Corp. & Affiliates v. United States*, 126 F.3d 1397, 1404 (Fed. Cir. 1997). While this is merely a rule of statutory construction, and like any other should yield when the clear purpose of the statute requires it, in this instance the construction sought by Plaintiffs is simply too different absent some indication by Congress that it so intends.

Although the Court has scoured the legislative history, it was unable to find any reference to such an approach. The Employment, Housing and Aviation Subcommittee of the House Committee on Government Operations held hearings on trade adjustment assistance. Although a few statements touch upon the subject, none definitively suggest that Congress intended to change the program in the manner advocated by the Plaintiffs.

First, it should be noted that the amendments to the trade adjustment assistance portions of the Trade Act of 1974 were intended to be temporary and a comprehensive worker adjustment assistance program was supposed to be implemented later. *See, e.g., Trade Adjustment Assistance: A Failure for Displaced Workers: Hearing Before the Subcomm. on Employment, Housing and Aviation of the House Comm. on Gov't Operations*, 103rd Cong. 103-05, 182 ("*Hearing*"). An administration official testified that the

bridge program uses TAA as the legislative vehicle with some significant differences. *See id.* at 182 (statement of Douglas Ross, Assistant Secretary, Employment and Training Administration, U.S. Department of Labor). Importantly, Mr. Ross' prepared statement, along with various fact sheets and the proposed statement of administrative action, note that the NAFTA program was transitional and a precursor to the comprehensive worker readjustment proposal that was to be submitted in 1994. *See id.* at 103-05, 189. To the Court's knowledge a comprehensive plan has not passed Congress, but there is a proposal to consolidate NAFTA-TAA with TAA. *See* H.R. 1491, 106th Cong. (1999).

Nevertheless, the statements indicate that the legislation presented to Congress did not address every aspect of the problems faced by dislocated workers. *See, e.g.*, *Hearing* at 139 (statement of Linda G. Morra, Director, Education and Employment Issues, Human Resources Division, U.S. General Accounting Office) ("As Congress debates NAFTA and considers how best to assist those workers who will be affected, as well as other dislocated workers, it may wish to consider a simplified approach that assists workers regardless of the reason for their dislocation."). The Court is aware of the perils of using witnesses' statements as evidence of Congress' legislative intent. *See, e.g., Heartland By-Products, Inc. v. United States*, 74 F. Supp. 2d 1324, 1336 (CIT 1999). However, in this instance the legislation was submitted by the Clinton Administration, and thus, statements by Ross express Labor's understanding.

Since nothing in the legislative history evinces a clear intent to attribute a different meaning to the term articles, the Court is constrained by the language of the statute to conclude that Labor is acting in accordance with that statute. It is for Congress to address the problem presented by a two-step shift in production and hopefully it will when it consolidates the NAFTA-TAA with TAA. But for now, Labor's position, which is borne out by the language of the statute, precludes providing relief to workers who do not produce articles

like or directly competitive with those being produced abroad, although the devastating effect to the worker who loses his or her job is obviously the same as it would have been had the shift in production occurred in one step only.

B.    *Substantial Evidence Supports Labor's Remand Determination.*

In addition to ordering Labor to reconsider its position with respect to two-step shifts in production, the Court also required Labor to provide a more detailed explanation of whether the articles produced at the Pennsylvania facility were like or directly competitive with those produced in Mexico and to describe the amount and types of equipment that moved from Pennsylvania to Mexico. *See Champion I* at 10.  Labor has done so and the Court concludes that the decision now rests upon substantial evidence.

19 U.S.C. § 2395(b) provides that like the initial review, Labor's new or modified findings of fact are conclusive if supported by substantial evidence.  Substantial evidence, in turn, "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

In its supplemental investigation, Labor contacted individuals with knowledge of the various facilities and acquired certain Cooper Industry organizational charts.  As a result, Labor was able to determine that production equipment did not move from Pennsylvania to Mexico. *See* Supplemental Administrative Record at 23, 43 ("SAR").  This evidence negates the possibility that a direct shift in production may have occurred, albeit over an extended time period.  Additionally, one of the individuals contacted stated that the shift of production from Pennsylvania to Tennessee could have happened absent any shift to Mexico and that the two events were totally unrelated. *See* SAR at 24.  Although the evidence is inconsistent on this point, *see* SAR

at 23, the Court may not draw its own conclusion. *See Consolo*, 383 U.S. at 619-20. Here, the agency has chosen to credit the statement made by one individual over another as support for its determination that a two-step shift in production did not occur. *See* SAR at 42. Further, Labor obtained information providing a more detailed explanation of the articles produced at the facilities in Pennsylvania and Mexico and found them to be neither like nor directly competitive. *See* SAR at 17-18, 24, 34, 40-41. Finally, the organizational charts show that Cooper Industries did not consider the Pennsylvania and Tennessee facilities to be part of the same subdivision. *Compare* SAR at 29 *with* SAR at 31. This fulfills Labor's duty, cited by the Court, to make inquiries into the corporation's organizational structure. *Champion I* at 8. Thus, the Court finds Labor's remand determination as to the appropriate subdivision and whether the articles were like or directly competitive to be supported by substantial evidence.

### III.  CONCLUSION

For the reasons discussed herein, the Court finds that Labor's remand determination is supported by substantial evidence and is in accordance with law. The Court will enter judgment accordingly.

Dated: _____                                       _____
        New York, N.Y.                                                   Judith M. Barzilay, Judge